FRAME v NEHLS

Docket No. 102139. Argued November 7, 1995 (Calendar No. 11). Decided
July 3, 1996.

Gina Frame brought an action in the Kalamazoo Circuit Court to
determine paternity, alleging that Jay Nehls was the father of her
son Dustin. Nehls admitted paternity, and the court, William G.
Schma, J., entered an order of filiation awarding the plaintiff cus-
tody of the child and the defendant regular visitation. Thereafter,
Stephen Nehls, the child's paternal grandfather, petitioned for visi-
tation. The court granted the plaintiff summary disposition on the
basis of *Nelson v Kendrick*, 187 Mich App 367 (1991), which held
that a complaint for determination of paternity does not constitute
a child custody dispute within the meaning of the grandparent visi-
tation statute, MCL 722.27b; MSA 25.312(7b). The Court of Appeals,
MICHAEL J. KELLY, P.J., and CONNOR and J. M. GRAVES, JR., JJ., reversed,
reasoning that the grandparent visitation statute violated the Equal
Protection Clauses of the federal and state constitutions and deter-
mined that *Nelson* was not binding (Docket No. 168015). The plain-
tiff appeals.

In an opinion by Justice BOYLE, joined by Chief Justice BRICKLEY,
and Justices RILEY, MALLETT, and WEAVER, the Supreme Court *held*:

The grandparent visitation statute does not authorize an order of
visitation under the circumstances of this case because the
grandchild's father is not deceased and is not involved in a child
custody dispute as defined by the statute. The statute is constitu-
tional; grandparents are not a suspect class, nor do they have a fun-
damental right to visit their grandchildren. The classifications cre-
ated are rationally related to a legitimate government purpose.

1. Grandparents have standing under MCL 722.27b; MSA
25.312(7b) to petition a court for visitation of their grandchildren
only in carefully limited circumstances. Subsections 1 and 2 permit
visitation if the grandparent's child (the parent of the grandchild)
dies, the marriage of the grandchild's parents is annulled, the
grandchild's parents are divorced, the grandchild's parents are
legally separated, legal custody is awarded to a third party, or the
child is placed outside the home of a parent. Grandparents of both
legitimate and illegitimate children may be entitled to visitation,

but a putative father first must acknowledge paternity. In this case, the paternal grandfather has failed to establish standing to seek an order of visitation under the statute.

2. The grandparent visitation statute does not involve a fundamental right; rather, grandparent visitation is a right created by statute. Moreover, the statute does not involve historically disparaged classifications. Because no fundamental right or suspect classification is involved, the statute will be upheld as long as the classifications are rationally related to a legitimate governmental purpose. In this instance, the Legislature had a rational basis for creating these classifications and limiting the situations in which a grandparent may seek visitation. Thus, the grandparent visitation statute does not deprive the paternal grandfather of equal protection of the law.

Reversed and remanded.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that the majority's reading of the statute violates the rule of construction that statutes should be read to avoid constitutional questions if violence thereby will not be done to the language of the statute, and frustrates the intent of the Legislature to ensure that the best interests of the child take first priority. As construed by the majority, the statute denies equal protection of the laws to the grandchild and grandparent.

The Legislature did not intend to limit child custody disputes only to those situations involving death, divorce, and legal separation of the parents. Because the Child Custody Act provides in effect that a grandchild visitation order may be entered for the grandparents of a putative father where paternity has been adjudicated by a court of competent jurisdiction, the Legislature intended that a grandparent visitation order may be entered when the union of an illegitimate child's parents, who never married, is dissolved, if the putative father has been so adjudicated or otherwise is within the statutory definition.

No important governmental interest would be advanced by providing an opportunity for grandparent visitation when the union of the parents of a legitimate child has been dissolved, and denying such opportunity where the union of an illegitimate child's parents is dissolved. The statute, correctly construed, is constitutional, but, as construed by the majority, denies equal protection of the laws.

The Child Custody Act provides that it is equitable in nature and is to be liberally construed and applied to establish promptly the rights of the child and the rights and duties of the parties involved. This language does not express the threshold limitation inferred by the majority. Rather, it clearly and unambiguously references all

provisions of the act, not the provisions of the act except those addressing standing. If there is a doubt concerning the act's coverage, it should be resolved to best safeguard the child's rights, not any right of the parents to avoid a hearing to determine what will serve the child's best interests.

This case concerns whether there should be a hearing concerning what is in the best interests of the child, not whether visitation should be ordered regardless of the love, affection, or responsibility of these grandparents. The Supreme Court should engage in such substantive analysis, and determine if the reasons for allowing a grandparent visitation petition after divorce or legal separation also obtain where the parents were living together with the child without benefit of clergy before they separated. Because an order of filiation providing for custody and visitation is the substantive equivalent of an order providing for custody and visitation in a divorce or separation proceeding, the Supreme Court should find that there was a child custody dispute within the meaning of the statute. In short, the reasons for allowing a petition for visitation in the context of a divorce, legal separation, or annulment are also present in the context of an order of filiation.

Illegitimacy classifications receive heightened scrutiny because the United States Supreme Court has determined that it is not appropriate to penalize a child on the basis of the marital status of the parents, over which the child has no control. In this case, the child and his grandparents are being deprived of the benefit of a best-interests hearing regarding grandparent visitation simply because his parents never married, a matter over which he had no control. Such state-sanctioned deprivation of a statutory benefit on such a basis should not be permitted absent a substantial relationship to an important governmental interest.

It is the statute that forces the inquiry into an analysis of the effect on grandchildren. No important governmental interest is advanced by denying illegitimate children the right to have their grandparents petition for custody. This not only fails heightened scrutiny, but rational basis scrutiny as well. The critical inquiry concerns the specific line drawn, not the general statutory framework. Under the correct analysis, the grandparent visitation statute, as construed by the majority, deprives the child and the grandparents in this case and those similarly situated equal protection of the law. The majority forgoes analysis by relying on uninformed stereotypes and conjecture.

208 Mich App 412; 528 NW2d 773 (1995) reversed.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *Harry Contos, Jr.*), for the plaintiff.

*Ford, Kriekard, Domeny & Byrne* (by *Richard D. Stroba*) for the defendant.

BOYLE, J. In this case, we interpret MCL 722.27b; MSA 25.312(7b), the section of the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, that involves the right of grandparents to seek visitation of their grandchildren.[1] We granted leave to determine whether the grandparent visitation statute entitles appellee to seek court-ordered visitation, and whether it unconstitutionally deprives appellee-grandfather equal protection of the law.

The Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, does not authorize an order of visitation because the grandchild's father is not deceased, and the father is not involved in a child custody dispute as defined under MCL 722.27b(2); MSA 25.312(7b)(2). The relevant section of the statute leaves the decision to allow grandparent visitation to the discretion of the parents of the grandchild, whether they are married or unmarried, as long as the parents are living and at least one parent has custody of the grandchild. The one instance in which the statute treats grandparents differently, depending on whether the living child through whom the grandparent claims standing has married the other parent of the grandchild, focuses on the parents' marital status with respect to the grandparents.

The classification created involves neither a suspect class, nor a fundamental right, is rationally

---

[1] We will refer to this section as the "grandparent visitation statute."

related to a legitimate government purpose, and does not violate equal protection. The decision of the Court of Appeals is reversed.[2]

Dustin Nehls was born on March 21, 1991. At the time of Dustin's birth, plaintiff Gina Frame, his mother, was unmarried and living with defendant Jay Nehls. When plaintiff and defendant ended their relationship, plaintiff filed a complaint in the Kalamazoo Circuit Court to determine paternity. The complaint alleged that defendant, Jay Nehls, was the father. Defendant admitted paternity of Dustin. The circuit court entered an order of filiation, awarding plaintiff custody and awarding defendant regular visitation. Appellee, Stephen Nehls, Dustin's paternal grandfather, then petitioned the circuit court for visitation.

Plaintiff moved for summary disposition of appellee's petition on the basis of the Court of Appeals decision in *Nelson v Kendrick*, 187 Mich App 367; 466 NW2d 402 (1991). *Nelson* held that a complaint for determination of paternity does not constitute a "child custody dispute" within the meaning of the grandparent visitation statute. The trial court granted plaintiff's motion.

Appellee appealed, and the Court of Appeals reversed. 208 Mich App 412; 528 NW2d 773 (1995). The Court reasoned that the grandparent visitation statute violated the Equal Protection Clause under the federal and state constitutions. US Const, Am XIV; Const 1963, art 1, § 2. It had determined that *Nelson* was not binding because that Court did not address a

---

[2] Because of our disposition of these two issues, we need not reach the issue whether the Court of Appeals was bound to follow *Nelson v Kendrick*, 187 Mich App 367; 466 NW2d 402 (1991), under Administrative Order No. 1994-4, 445 Mich xci.

statutory section in the grandparent visitation statute that the Court in *Frame* believed was necessary for the full resolution of the issue.

We granted plaintiff's application for leave to appeal to determine the scope, as well as the constitutionality, of the grandparent visitation statute. 449 Mich 851 (1995).

### THE STATUTORY CLAIM

The familiar interpretive principles need no citation. The goal of statutory construction is to effect the intent of the Legislature. If the statute is clear, we enforce its directive. Judicial construction is authorized only where a statute is unclear and susceptible to more than one interpretation.

The legislative purpose behind the Child Custody Act is to "promote the best interests and welfare of children." *Fletcher v Fletcher*, 447 Mich 871, 877; 526 NW2d 889 (1994). The act directs that it is "equitable in nature and shall be liberally construed and applied to establish promptly the rights of the child and the rights and duties of the parties involved." MCL 722.26(1); MSA 25.312(6)(1). Section 7b of the Child Custody Act deals specifically with grandparent visitation.[3] MCL 722.27b(3); MSA 25.312(7b)(3). The grandparent visitation statute is consistent with the general purpose of the act, in that it permits a court

---

[3] Because § 7b is a specific section involving grandparent visitation, we reject the dissent's assertion that the general provisions regarding visitation found in § 7b of the Paternity Act, 1994 PA 388, MCL 722.717b; MSA 25.497(2), provide a means of seeking grandchild visitation. When two legislative enactments seemingly conflict, the specific provision prevails over the more general provision. *Malcolm v East Detroit*, 437 Mich 132, 139; 468 NW2d 479 (1991); *Imlay Twp Primary School Dist No 5 v State Bd of Ed*, 359 Mich 478, 485; 102 NW2d 720 (1960).

to enter a grandparent visitation order "if the court finds that it is in the best interests of the child" to do so. MCL 722.27b(3); MSA 25.312(7b)(3). However, before such a determination may be made, the court must first resolve a threshold matter: whether the parties before it have standing. The Legislature has granted grandparents standing to petition for visitation of their grandchildren only in "carefully limited circumstances."[4] Subsection 1 of the grandparent visitation statute states:

> Except as provided in this subsection, a grandparent of the child may seek an order for visitation in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. If a natural parent of an unmarried child is deceased, a parent of the deceased person may commence an action for visitation. Adoption of the child by a stepparent . . . does not terminate the right of a parent of the deceased person to commence an action for visitation. [MCL 722.27b(1); MSA 25.312(7b)(1).]

This subsection announces the general rule that a grandparent has standing to seek visitation only if a child custody dispute is pending.[5] An exception to

---

[4] House Legislative Analysis, SB 439 and 440, November 18, 1982. To the contrary, the dissent contends the "underlying principle is to allow grandparents to petition for visitation when circumstances make it unlikely they will *obtain an appropriate opportunity to visit the grandchild." Post* at 201. Legislative history lends no support to this conclusion.

[5] The Court of Appeals has held that a child custody dispute is still "pending" after a divorce judgment has been entered because a circuit court retains jurisdiction in such cases for purposes of enforcement or modification of the judgment until the child reaches the age of majority. *Brown v Brown,* 192 Mich App 44, 45; 480 NW2d 292 (1991); *Jewett v Jewett,* 172 Mich App 391, 394; 431 NW2d 523 (1988); *Olepa v Olepa,* 151 Mich App 690, 696; 391 NW2d 446 (1986).

this rule is created for cases in which the child of the grandparent (the parent of the grandchild) is deceased. This first subsection clearly and unambiguously presents the only two situations in which grandparent visitation can be sought.

Because Dustin's father is alive, appellee, Dustin's paternal grandfather, can only seek visitation if a "child custody dispute" involving Dustin is pending. Subsection two defines child custody dispute clearly and unambiguously. That subsection provides:

> As used in this section, "child custody dispute" *includes* a proceeding in which any of the following occurs:
>
> (a) The marriage of the child's parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.
>
> (b) Legal custody of the child is given to a party other than the child's parent, or the child is placed outside of and does not reside in the home of a parent, excluding any child who has been placed for adoption with other than a stepparent, or whose adoption by other than a stepparent has been legally finalized. [MCL 722.27b(2); MSA 25.312(7b)(2) (emphasis added).]

Appellee argues that it is ambiguous whether the statute's definition of "child custody dispute" should be read expansively or narrowly. He contends that liberal construction of the act and use of the word "includes" require that the definition of child custody dispute be read to embrace situations not specifically enumerated in §§ 2(a) and 2(b). A review of the text of the Child Custody Act, as well as the legislative history of the grandparent visitation statute, leads to the opposite result.

When used in the text of a statute, the word "includes" can be used as a term of enlargement or of

limitation, and the word in and of itself is not determinative of how it is intended to be used. *Belanger v Warren Bd of Ed*, 432 Mich 575, 587, n 25; 443 NW2d 372 (1989). The term "child custody dispute," or a variation thereof, is used in virtually every section of the Child Custody Act. Nowhere but in the grandparent visitation section, however, is the term defined.[6] As recognized by the Court of Appeals in *Nelson v Kendrick, supra,* other sections of the act use the term broadly to mean any action or situation involving the placement of a child. 187 Mich App 370. We agree with the *Nelson* Court that, unlike other sections of the act, the specific definition provided in the grandparent visitation statute must be interpreted as a limitation on the term's broad general usage. *Id.* at 371.

The legislative history of the grandparent visitation statute supports a narrow reading of the term. Senate Bill 316, introduced in 1991, proposed to amend the grandparent visitation statute to "add to the conditions under which a grandparent may seek visitation rights . . . ." Senate Fiscal Agency Analysis, SB 316-317, May 21, 1991, p 1. The bill, which failed to pass, would have amended the current statute by adding five new subsections to the definition of child custody dispute, one of which would have conferred standing upon grandparents "if the parents [of the grandchild] were never married and were not living in the same household." Had SB 316 passed, this proposed subsection would have conferred grandparent standing under the facts in this case. If the Legisla-

---

[6] The definition specifies that it applies only to the grandparent visitation section, not to other sections of the act.

ture intended the present definition of "child custody dispute" to confer standing in situations other than those specified in the provision here in issue, such an amendment would have been unnecessary. The proposed amendment of the grandparent visitation statute supports the conclusion that the Legislature intended the current definition of child custody dispute to encompass only those situations specifically enumerated in subsection 7b(2).

In light of the statute's text and legislative history, we hold that the most reasonable reading of this definitional section is that grandparents who are unable to establish that they fall under one of the situations listed in subsections 2(a) and 2(b)[7] cannot seek visitation by claiming their grandchild is the subject of a child custody dispute.[8]

Under subsection 2(a), a child custody dispute occurs when the marriage of a child's parents is

---

[7] If the grandparent's child, who is the parent of the grandchild, is deceased, the grandparent would have standing to seek visitation under subsection one. MCL 722.27b(1); MSA 25.312(7b)(1). The instant case does not involve such facts, however.

[8] The dissent believes that standing should be liberally construed in order to allow a court to reach the issue whether it is in the child's best interest to have contact with his grandparents. *Post* at 197-200. We decline to disregard the intent of the Legislature by engaging in an inquiry regarding whether an order of filiation is the functional equivalent of a divorce proceeding, thereby treating the unmarried parents' relationship as if it were a union that has been dissolved. This approach suggests that any grandparent "squeezed out," *id.* at 201, by the failure of the father or mother to grant visitation could claim that a functional divorce has occurred, separating him from the child, and assert that visitation is in the child's best interests. The dissent's interpretation would turn the availability of a petition for grandparent visitation on the factual question whether the parents had a "traditional family setting," *id.*, which has broken down and resulted in a separation. The fact that there are many situations in which the parents of an illegitimate child have never lived together as a family, despite an order of filiation, is one illustration of the obvious: an order of filiation is not the functional equivalent of a divorce.

annulled or ends in divorce, or the child's parents are legally separated. A child custody dispute exists under subsection 2(b) when legal custody of the child is given to someone other than a parent, or the child is placed outside the home of a parent.[9]

In sum, the specific situations in which the Legislature permits grandparents to seek visitation are: (1) if the grandparent's child dies, (2) if the grandchild's parents' marriage is annulled, (3) if the grandchild's parents are divorced, (4) if the grandchild's parents are legally separated, (5) if legal custody is awarded to a third party, and (6) if the child is placed outside the home of a parent.

We also decline appellee's invitation to construe subsection 3 of the statute, MCL 722.27b(3); MSA 25.312(7b)(3), as creating a third source of standing for grandparents seeking visitation. Appellee points to the language regarding putative[10] fathers and contends that if the grandparent visitation statute did not apply to paternity cases, then subsection 3 would not mention putative fathers. We disagree. Subsection 3 is procedural. It applies only to grandparents who have established standing under subsections 1 and 2 either because their child is deceased or a child custody dispute involving their grandchild is pending. As indicated below, grandparents of both legitimate and illegitimate children may be entitled to visitation under

---

[9] Excluding any child who is placed for adoption with other than a stepparent or whose adoption by other than a stepparent has been legally finalized. MCL 722.27b(2)(b); MSA 25.312(7b)(2)(b).

[10] Subsection 3 states in part: "A grandchild visitation order shall not be entered for the parents of a putative father unless the father has acknowledged paternity in writing, been adjudicated to be the father by a court of competent jurisdiction, or has contributed regularly to the support of the child or children." MCL 722.27b(3); MSA 25.312(7b)(3).

this statute, thus explaining the reference to putative
fathers. The sentence appellee specifies places a fur-
ther limitation on grandparents of illegitimate chil-
dren—it requires a putative father to acknowledge
paternity or otherwise recognize his child before the
paternal grandparents can seek visitation.[11] The sen-
tence is one of limitation; it does not create another
situation in which visitation may be sought.

Our reading of the grandparent visitation statute is
consistent with the legislative approach to third-party
custody issues, which we have found limit a
nonparent's right to seek custody. *Ruppel v Lesner*,
421 Mich 559, 565-566; 364 NW2d 665 (1984); *Bowie v
Arder*, 441 Mich 23, 48-49; 490 NW2d 568 (1992); *In
re Clausen*, 442 Mich 648, 683-684; 502 NW2d 649
(1993). As stated by *Ruppel*, "nothing in the Child
Custody Act, nor in any other authority of which we
are aware, authorizes a nonparent to create a child
custody 'dispute' by simply filing a complaint in cir-
cuit court alleging that giving custody to the third
party is in the 'best interests of the child.' " *Ruppel*,
*supra* at 566. Likewise, we decline to create a right to
seek grandchild visitation where the statute does not
do so.[12] Appellee has failed to establish that he has

---

[11] This sentence, although it discriminates on the basis of legitimacy,
passes constitutional muster. See n 16.

[12] We disagree with the dissent that "grandparents [petitioning for
grandchild visitation] serve as legal surrogates for the grandchild's inter-
ests." *Post* at 214. Such an assertion underscores the dissent's thinly dis-
guised position that grandparent visitation should always be awarded to
grandparents because it is always in the best interest of the grandchild.
That we may agree with this sentiment and sympathize with grandparents
who are denied visitation by the parents of their grandchildren, see com-
ment, *The coming of age of grandparent visitation rights*, 43 Am U L R
563, 567, n 20 (1994); Victor, *History of grandparent visitation in Michi-
gan*, 71 Mich B J 270 (March, 1992), is not the issue. The issue here is

standing to seek an order of visitation under the statute.

THE EQUAL PROTECTION CLAIM

Appellee next argues that the grandparent visitation statute deprives appellee of equal protection under the law. The Court of Appeals found that the statute created classifications on the basis of illegitimacy, a quasi-suspect class, and thus was subject to heightened scrutiny. The Court concluded that the Legislature's classification, "seemingly based upon the fortuity of a marriage contract," was not related to an important governmental interest. 208 Mich App 416.

Equal protection of the law is guaranteed by the federal and state constitutions. The Michigan and federal Equal Protection Clauses offer similar protection. *Doe v Dep't of Social Services*, 439 Mich 650, 670-671; 487 NW2d 166 (1992). Unless the discrimination impinges on the exercise of a fundamental right or involves a suspect class, the inquiry under the Equal Protection Clause is whether the classification is rationally related to a legitimate governmental purpose. *Id.* at 662. When determining the constitutionality of a statute, a court must not be " 'guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy . . . .' " *Gomez v United States*, 490 US 858, 864; 109 S Ct 2237; 104 L Ed 2d 923 (1989).

Grandparent visitation is not encompassed within the definition of a "fundamental right" explicated by

---

standing, and the language chosen by the Legislature mandates the result we reach today.

the United States Supreme Court.[13] The right of visitation is one created by statute. OAG, 1981-1982, No 5,903, p 193 (May 15, 1981).[14] See also *Ruppel, supra* at 565, n 6 ("The Child Custody Act does not create substantive rights of entitlement to custody of a child. . . . The single exception to this principle is in the limited rights of visitation for grandparents created by 1982 PA 340, MCL 722.27b; MSA 25.312[7b].").

Moreover, the statute does not involve historically disparaged classifications. Appellee contends that the statute creates two classes: grandparents who have legitimate grandchildren and grandparents whose grandchildren are illegitimate. Because the classification is based on legitimacy, appellee asserts that intermediate scrutiny must be used. *Clark v Jeter*, 486 US 456, 461; 108 S Ct 1910; 100 L Ed 2d 465 (1988); *Dones v Thomas*, 210 Mich App 674, 677; 534 NW2d 221 (1995).

---

[13] In *Moore v City of East Cleveland*, 431 US 494; 97 S Ct 1932; 52 L Ed 2d 531 (1977), the United States Supreme Court indicated that the Fourteenth Amendment Due Process Clause accords some protection to the extended family. In *Moore*, a grandmother challenged a zoning ordinance defining "family" in a manner that made it illegal for her son and her two grandsons, who were first cousins rather than brothers, to live with her. The Supreme Court invalidated the ordinance on the ground that the Due Process Clause prohibits the state from dictating family organization, at least where the traditional extended family is involved. *Id.* at 504. The right to define "family," however, is not involved in this case.

[14] Other states have held that the common law does not provide for grandparent visitation. See, e.g., *King v King*, 828 SW2d 630, 632 (Ky, 1992), cert den 506 US 941; 113 S Ct 378; 121 L Ed 2d 289 (1992); *In re Adoption of RDS*, 787 P2d 968, 969 (Wyo, 1990); *White v Jacobs*, 198 Cal App 3d 122, 124-125; 243 Cal Rptr 597 (1988); *In re Guardianship of Green*, 525 NE2d 634, 636 (Ind App, 1988); *In re Whitaker*, 36 Ohio St 3d 213, 215; 522 NE2d 563 (1988); *Ward v Ward*, 537 A2d 1063, 1069 (Del, 1987); *Jeffries v Jeffries*, 253 SE2d 689, 691 (W Va, 1979).

A review of the statute as a whole, however, indicates that the Legislature did not create classifications using legitimacy as a factor. Nowhere in the statute is a distinction made between children born in wedlock and children born out of wedlock. Subsection 1 of the grandparent visitation statute provides:

> Except as provided in this subsection, a grandparent of the child may seek an order for visitation in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. If a natural parent of an unmarried child is deceased, a parent of a deceased person may commence an action for visitation. Adoption of the child by a stepparent . . . does not terminate the right of a parent of the deceased person to commence an action for visitation. [MCL 722.27b(1);   MSA 25.312(7b)(1).]

This subsection presents two situations in which a grandparent may seek visitation of a grandchild: when a child custody dispute with respect to that grandchild is pending, or when the grandparent's child (the parent of the grandchild) is deceased. Stated otherwise, on its face, the section does not contemplate a grandparent visitation order if there is no custody dispute and the grandparents' child is still alive, whether or not the grandchild is born legitimate.

In the case before us, both of Dustin's parents are alive. Thus, the focus is on whether a child custody dispute involving Dustin is pending. Subsection 2 defines "child custody dispute" for purposes of grandparent visitation:

> As used in this section, "child custody dispute" includes a proceeding in which any of the following occurs:

(a) The marriage of the child's parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.

(b) Legal custody of the child is given to a party other than the child's parent, or the child is placed outside of and does not reside in the home of a parent, excluding any child who has been placed for adoption with other than a stepparent, or whose adoption by other than a stepparent has been legally finalized. [MCL 722.27b(2); MSA 25.312(7b)(2).]

This definitional section does not posit a judicially enforceable right that distinguishes between children who are born in wedlock and those born out of wedlock. As drafted, the definition of "child custody dispute" under subsections 2(a) and 2(b) could be met whether the grandchild is legitimate or illegitimate. In a hypothetical situation,[15] where the child's mother and father marry, the child is born in wedlock, and the parents divorce, the existence of a "child custody dispute" under subsection 2(a) authorizes the grandparents to petition for visitation. Subsection 2(a) could still apply to permit grandparent visitation if the hypothesis is altered to assume a child born out of wedlock, whose parents marry, and later divorce. The statute as drafted would not preclude an order of visitation. Because the marriage of the child's parents was dissolved by a court, the grandparents could peti-

---

[15] The following examples are theoretical only, for purposes of a facial examination of the statute under the federal and state Equal Protection Clauses. We are not examining the statute as applied except in the limited situation presented by the parties. Our analysis is not to be understood to say that in all instances or under all circumstances will this statute comport with the dictates of the federal and state Equal Protection Clauses. However, we will not engage in such analysis until the appropriate facts present themselves. *Fortson v Dorsey*, 379 US 433, 438-439; 85 S Ct 498; 13 L Ed 2d 401 (1965).

tion for visitation of their illegitimate grandchild.[16]
Thus, subsection 2(a) does not classify on the basis
of legitimacy—it permits grandparent visitation when
the grandchild is either legitimate or illegitimate as
long as its terms are met.

A facial examination of the language of subsection
2(b) similarly does not support the contention that
the legislation classifies by illegitimacy.[17] Where the
parental rights of a legitimate child's parents are ter-
minated and the child is placed with a third party,
subsection 2(b), as drafted, authorizes visitation at
the request of the grandparents of the legitimate
child. When the hypothesis is altered to assume an
illegitimate child of a mother whose parental rights
are terminated and the child is placed outside the
home, subsection 2(b) authorizes visitation because
the illegitimate child resides with neither parent.[18]

It is true that, in the instant case, had Dustin's par-
ents married, then divorced, instead of simply living

---

[16] The paternal grandparents, however, would be awarded visitation
only if their son (the father of the child) has acknowledged paternity in
writing, has been adjudicated to be the father by a court of competent
jurisdiction, or has contributed regularly to the support of the child. MCL
722.27b(3); MSA 25.312(7b)(3). These requirements are not further cir-
cumscribed, *Mills v Habluetzel*, 456 US 91; 102 S Ct 1549; 71 L Ed 2d 770
(1982), and are clearly related to the state's interest in assuring that there
is some relationship between the father and the child and in encouraging
putative fathers to acknowledge paternity.

[17] Even the dissent recognizes that the grandparent visitation statute
does not discriminate on the basis of legitimacy:

While this line is not quite the same as the line drawn under ear-
lier definitions of illegitimacy . . . , both parental groups are the
same for equal protection analysis . . . . [*Post* at 210.]

[18] Again, the paternal grandparents would not be entitled to visitation
unless their son acknowledged paternity, was adjudicated to be the father,
or contributed regularly to the support of the child. MCL 722.27b(3); MSA
25.312(7b)(3).

together unmarried, the result would be different. If a divorce were involved, a "child custody dispute" would exist under subsection 2(a) and appellee could seek visitation. However, this distinction does not arise from a classification based on legitimacy. Had Dustin's parents married after Dustin was born, and then divorced, a "child custody dispute" would exist under subsection 2(a) even though Dustin was born out of wedlock.[19]

Appellee has failed to show that the legislation has a substantial disparate effect on a disadvantaged class. Grandparents of a legitimate child are denied standing where neither subsections 2(a) nor 2(b) are

---

[19] The dissent reaches the opposite conclusion, finding that the grandparent visitation act, as we interpret it, unconstitutionally classifies on the basis of legitimacy. *Post* at 211-212. The dissent erroneously claims no grandparent visitation hearing was held "because [Dustin's] parents never married, over which he had no control." *Id.* at 213. In fact, no hearing was held because appellee satisfied none of the six ways of establishing standing. See *supra* at 181. The dissent improperly focuses solely on § 2(a), which concededly uses the parents' marital status as a means of separating those grandparents who may seek visitation and those who may not. However, as established above, *supra* at 186-187, the classification set forth in § 2(a) adversely affects grandparents who seek visitation both of legitimate and illegitimate grandchildren. Simply because Dustin happens to be illegitimate and appellee's situation does not fulfill the statute's standing requirements does not mean the statute classifies on the basis of legitimacy. Read as a whole, the classifications within the statute are constitutional.

Nor does our reading of the statute disproportionately affect illegitimate children. Under this analysis, the party challenging the law must prove discriminatory motive or intent. *Arlington Heights v Metropolitan Housing Development Corp*, 429 US 252, 264-265; 97 S Ct 555; 50 L Ed 2d 450 (1977). Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v Feeney*, 442 US 256, 279; 99 S Ct 2282; 60 L Ed 2d 870 (1979). Appellee has set forth no evidence in support of this requirement.

satisfied,[20] while grandparents of an illegitimate child can claim a right to visitation if subsections 2(a) or 2(b) are satisfied. The incidental effect on illegitimates as a class "is not sufficient" to warrant heightened scrutiny analysis. *Califano v Boles*, 443 US 282, 296; 99 S Ct 2767; 61 L Ed 2d 541 (1979).[21]

The classifications created under the grandparent visitation statute are grandparents whose child is deceased or involved in a custody dispute (who may seek visitation), and grandparents whose child is alive or not involved in a custody dispute (who may not seek visitation).[22] Because there is no fundamental right or suspect classification involved, a rational basis test is used. Under this test, the grandparent visitation statute will be upheld as long as the classifications therein are rationally related to a legitimate governmental purpose. *Doe, supra* at 662.

---

[20] For example, if the parents of the child are married and have custody of their child, yet do not permit the grandparents to see the child, the grandparents have no recourse under the grandparent visitation statute. Likewise, if the parents of the child have not married, and the maternal grandparents seek visitation, and their living child has custody, the grandparents have no recourse under the statute.

[21] *Califano v Boles* holds that "mother's insurance benefits" payable only to divorced wives and widows of wage earners, not to unwed mothers, is not a classification on the basis of legitimacy because any effect on illegitimate children is incidental and, to a large degree, speculative. *Id.* at 296.

[22] The dissent argues that the statute classifies on the basis of the marital status of the child's parents. Citing *Trimble v Gordon*, 430 US 762; 97 S Ct 1459; 52 L Ed 2d 31 (1977), *post* at 211-212, it concludes that such a classification is equivalent to classifying on the basis of legitimacy, and therefore is entitled to heightened scrutiny. The dissent's reliance on *Trimble* illustrates that it misconstrues the focus of the statute. Subsection 2(a) of the statute does not classify on the basis of legitimacy; therefore, *Trimble* is inapposite. Rather, subsection 2(a) creates classes on the basis of the marital status of the parents with respect to the grandparents, not with respect to the grandchild.

There is a rational basis for creating these classifications and thus limiting the situations in which a grandparent may seek visitation.[23] The Legislature might have determined that unlimited resort to judicially enforced grandparent visitation might infringe on a parent's fundamental right to raise a child without interference from the government,[24] that unlimited jurisdiction over grandparent visitation might invite legal disputes over issues that are more appro-

---

[23] In *Lockhart v Lockhart*, 603 NE2d 864 (Ind App, 1992), the Indiana Court of Appeals likewise engaged in rational basis review of a grandparent visitation statute that was challenged on equal protection grounds. The dissent cites *Lockhart* for the rationale that court uses to uphold the classes created in the Indiana statute, and adopts that rationale to support its interpretation of the Michigan statute. *Post* at 202. The Indiana statute draws a line between the parents of the custodial parent and the parents of the noncustodial parent. Similarly, in Michigan, subsection 2(b) prohibits a petition for grandparent visitation unless the child resides with neither parent. The language the dissent quotes from *Lockhart* does not resolve whether subsection 2(b) discriminates against illegitimates; however, because grandparents of both legitimate and illegitimate children are treated similarly under subsection 2(b), neither group of grandparents may petition for visitation unless the grandchild resides with neither parent.

[24] The United States Supreme Court has long recognized that parents have a constitutionally protected interest, with certain constraints, in raising their children without state interference. *Lehr v Robertson*, 463 US 248, 256-262; 103 S Ct 2985; 77 L Ed 2d 614 (1983); *Bellotti v Baird*, 443 US 622, 638; 99 S Ct 3035; 61 L Ed 2d 797 (1979); *Parham v JR*, 442 US 584, 602; 99 S Ct 2493; 61 L Ed 2d 101 (1979); *Wisconsin v Yoder*, 406 US 205, 232-233; 92 S Ct 1526; 32 L Ed 2d 15 (1972); *Pierce v Society of Sisters*, 268 US 510, 534-535; 45 S Ct 571; 69 L Ed 1070 (1925); *Meyer v Nebraska*, 262 US 390, 399; 43 S Ct 625; 67 L Ed 1042 (1923). See also *Brooks v Parkerson*, 265 Ga 189; 454 SE2d 769 (1995). In *Brooks*, the Georgia Supreme Court determined that in order to protect parents' constitutional right to raise their children free from undue state interference, its grandparent visitation statute must be struck down as unconstitutional. The statute provided no limitation on grandparent standing and permitted a court to grant visitation "upon proof of special circumstances which make such visitation rights necessary to the best interests of the child." Ga Code Ann 19-7-3(c). The court concluded that "state interference with parental rights to custody and control of children is permissible only where the health or welfare of a child is threatened." *Id.* at 193.

priately resolved outside the legal forum, or that because visitation disputes by definition involve interfamily conflict, expansive jurisdiction would not serve the minor's best interests.[25] In relying on the married status of a child's parents in subsection 2(a) to determine whether a grandparent has standing to seek visitation, the Legislature may have reasonably concluded that parents who decide to marry, whether before or after their child is born, have an established relationship, and that the relationship between the parents of the child's father and mother should be protected, despite the parents' divorce, separation, or annulment. In contrast, parents who conceive a child, but do not marry, may have no established relationship at all.[26] These legislative goals are not insubstantial, and the means chosen are rationally related to their promotion.[27]

---

[25] Comment, *The coming of age of grandparent visitation rights*, n 12 *supra*, 601; note, *The constitutional constraints on grandparents' visitation statutes*, 86 Colum L R 118, 124 (1986).

[26] Contrary to the dissent's suggestion, the paternity action was sought by plaintiff Gina Frame and not by the father, defendant Jay Nehls. Jay Nehls did admit paternity in this case. However, it does not follow that fathers who admit paternity when faced with a paternity complaint and DNA testing universally accept responsibility for rearing their children. According to the dissent's interpretation of the statute, the parents of a recalcitrant father whose paternity is only established by a court proceeding would have a right to seek visitation upon the establishment of their child's paternity even though they have no relationship whatsoever with their grandchild. Such a prospect might discourage women from seeking to establish the paternity of absentee fathers. The Legislature may reasonably have wished to preclude this possibility.

[27] The dissent contends that there is no explanation for the classifications set forth in the grandparent visitation statute. The lines are drawn where they are because the Legislature put them there. As long as these lines survive rational basis review, which they do, this Court must defer to the legislative policy choices. In *Mathews v Lucas*, 427 US 495, 515; 96 S Ct 2755; 49 L Ed 2d 651 (1976), two illegitimate children challenged certain provisions of the Social Security Act under the Equal Protection Clause. Under the act, illegitimate children may only collect death bene-

The Legislature's classifications are rationally related to a legitimate government interest. Accordingly, we hold that the grandparent visitation statute does not deprive appellee of equal protection of the law.

We reverse the decision of the Court of Appeals, affirm the grant of summary disposition, and remand this case to the trial court for entry of judgment.

Brickley, C.J., and Riley, Mallett, and Weaver, JJ., concurred with Boyle, J.

Levin, J. (*dissenting*). Dustin Jay Nehls was born out of wedlock to appellant, Gina E. Frame, and Jay Franklin Nehls on March 21, 1991. Stephen Nehls, the appellee, is the father of Jay Nehls and is Dustin's grandfather.

The grandparents, Stephen Nehls and his wife, Ella, regularly visited their grandchild, Dustin, from his birth. From the time Dustin was four months old until he was ten months old, he and his parents lived with the grandparents.

---

fits upon a showing that they were dependent on the deceased wage earner. The statute, however, had in place certain presumptions that relieved some illegitimate children of the burden of setting forth proof of dependency. In upholding the statute, the Court stated:

> [T]he constitutional question is not whether such a presumption is required, but whether it is permitted. Nor, in ratifying these statutory classifications, is our role to hypothesize independently on the desirability or feasibility of any possible alternative basis for presumption. These matters of practical judgment and empirical calculation are for Congress.

Likewise, the judgment of the Legislature reflected in the statute is that, where the parents are living and have not married, grandparent visitation should be determined outside the judicial forum.

After Dustin and his parents moved out of the grandparents' home, the grandparents provided babysitting services for Dustin and cared for him at least once a week for over a year.

Jay Nehls and Gina Frame separated, and paternity proceedings were begun. Jay Nehls admitted paternity, was adjudicated to be the father, began paying support, and has visitation with Dustin pursuant to the court's order of filiation.

The grandparents allege that after the conclusion of the paternity action, they were unable to see Dustin except when he visited his father, Jay, because Gina Frame denied them the weekly visitation they had before entry of the order of filiation.[1] Stephen Nehls filed a petition for grandparent visitation in June, 1993. The circuit court granted Gina Frame's motion for summary disposition, citing *Nelson v Kendrick*, 187 Mich App 367; 466 NW2d 402 (1991).

The Court of Appeals reversed, stating that *Nelson v Kendrick* had been incorrectly decided both as a matter of statutory construction and constitutional law.[2] The Court said that "[c]lassifications based on illegitimacy are subject to intermediate or 'heightened' scrutiny under the Equal Protection Clause of the Fourteenth Amendment," citing *Clark v Jeter*, 486 US 456, 461; 108 S Ct 1910; 100 L Ed 2d 465 (1988). The Court observed that "[t]he grandparents of a child born to married parents would be entitled to

---

[1] While Gina Frame's reply brief in this Court contains an affidavit denying these allegations, the trial court granted her motion for summary disposition. We therefore must treat as true all well-pleaded allegations in the grandparent's petition for visitation. Cf. *Radtke v Everett*, 442 Mich 368, 373; 501 NW2d 155 (1993).

[2] 208 Mich App 412, 415; 528 NW2d 773 (1995).

pursue visitation rights pursuant to § 7b" of the Child Custody Act, as amended by 1982 PA 340 to provide for grandparent visitation.[3] The Court concluded that

---

[3] 208 Mich App 416.

Section 7b provides:

Except as provided in this subsection, a grandparent of the child may seek an order for visitation in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. If a natural parent of an unmarried child is deceased, a parent of the deceased person may commence an action for visitation. Adoption of the child by a stepparent under [MCL 710.21 to 710.70; MSA 27.3178(555.21) to 27.3178(555.70)] does not terminate the right of a parent of the deceased person to commence an action for visitation.

(2) As used in this section, "child custody dispute" *includes* a proceeding in which any of the following occurs:

(a) The marriage of the child's parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.

(b) Legal custody of the child is given to a party other than the child's parent, or the child is placed outside of and does not reside in the home of a parent, excluding any child who has been placed for adoption with other than a stepparent, or whose adoption by other than a stepparent has been legally finalized.

(3) A grandparent seeking a grandchild visitation order may commence an action for grandchild visitation, by complaint or complaint and motion for an order to show cause, in the circuit court in the county in which the grandchild resides. If a child custody dispute is pending, the order shall be sought by motion for an order to show cause. The complaint or motion shall be accompanied by an affidavit setting forth facts supporting the requested order. The grandparent shall give notice of the filing to each party who has legal custody of the grandchild. A party having legal custody may file an opposing affidavit. A hearing shall be held by the court on its own motion or if a party so requests. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard. At the conclusion of the hearing, if the court finds that it is in the best interests of the child to enter a grandchild visitation order, the court shall enter an order providing for reasonable visitation of the child by the grandparent by general or specific terms and conditions. If a hearing is not held, the court shall enter a grandchild visitation order only upon a finding that visitation is in the best interests of the child. *A grandchild visitation order shall not be entered for the parents of a putative father unless the father*

§ 7b, as construed by the circuit court, established classifications based on the legitimacy of the grandchild, and said:

> [This] classification, seemingly based upon the fortuity of a marriage contract, is not related to an important governmental interest, and constitutes a deprivation of equal protection with regard to both the child and his grandfather.[4]

We agree with the Court of Appeals. The majority's reading of the Child Custody Act violates the rule of construction that statutes should be read to avoid constitutional questions if violence will not be done thereby to the language of the statute.[5]

The majority's reading of the act frustrates the legislative intent to ensure that the best interests of the child take first priority.

---

*has acknowledged paternity in writing, has been adjudicated to be the father by a court of competent jurisdiction, or has contributed regularly to the support of the child or children.* The court shall make a record of the reasons for a denial of a requested grandchild visitation order. [MCL 722.27b;    MSA 25.312(7b) (emphasis added).]

[4] *Id.*

[5] Statutes should be construed to avoid constitutional difficulties if the language of the statute does not compel only one reading. See *Evans Products Co v State Bd of Escheats*, 307 Mich 506, 533-535; 12 NW2d 448 (1943). "In cases of [constitutional] doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act." *Sears v Cottrell*, 5 Mich 250, 259 (1858).

While this Court may not rewrite a statute, it may construe the language in a more or less restrictive manner to avoid constitutional questions. Cf. *Erznoznik v City of Jacksonville*, 422 US 205, 216; 95 S Ct 2268; 45 L Ed 2d 125 (1975), which discusses similar principles in constitutional challenges to the facial validity of a statute under the overbreadth doctrine of the First Amendment.

The act, as construed by the majority, denies equal protection of the laws to the grandchild and grandparent.

We would affirm the decision of the Court of Appeals.

I

Section 7b of the act (see n 3) authorizes a court to enter an order for grandparent visitation on a finding that visitation is in the best interests of the child when the union of a legitimate grandchild's parents is dissolved by death, divorce, or separation.

We would hold, as a matter of statutory construction, that, the Legislature intended that a grandparent visitation order may be entered when the union of an illegitimate grandchild's parents, who never married, is dissolved, if the putative father has been so adjudicated or otherwise is within the statutory definition. Because § 7b defines "child custody dispute" as "*includ[ing]*" the death, divorce, and legal separation of the parents, the Legislature did not intend to limit "child custody dispute" to only those situations. The act provides in effect that a grandchild visitation order may be entered by a court of competent jurisdiction for grandparents whose son was adjudicated to be the putative father.

We further address the statutory construction issue in part II.

No important governmental interest would be advanced by providing an opportunity for grandparent visitation when the union of the parents of a legitimate child has been dissolved, and denying such opportunity when the union of an illegitimate child's parents is dissolved. The act, correctly construed, is

constitutional, but, as construed by the majority, denies equal protection of the laws.

We further address the equal protection issue in part III.

II

The majority states that the act "clearly and unambiguously" defines a child custody dispute, and strictly limits the circumstances in which a grandparent may seek visitation.[6] The majority further states that the question who has standing as a grandparent to seek visitation must be resolved as a "threshold matter"[7] before and without regard to the provisions of the act calling for liberal construction.

A

The Child Custody Act provides: "This act is equitable in nature and shall be liberally construed and applied to establish promptly the rights of the child and the rights and duties of the parties involved."[8] This language does not express the "threshold" limitation inferred by the majority. Rather, it "clearly and unambiguously" references *all* provisions of the Child Custody Act, not "the provisions of this act *except those addressing matters of standing.*" This judicial rewriting of § 7b is unwarranted by the text and is legally erroneous.[9]

---

[6] *Ante* at 178.

[7] *Id.* at 177.

[8] MCL 722.26(1);  MSA 25.312(6)(1).

[9] Standing should not, we agree, be liberally construed to allow a court to always reach the question whether visitation is in the child's best interests, but rather it should be liberally construed, pursuant to the statutory mandate, to ensure the best interests of the child are given the paramount importance intended in the law.

The majority attempts to justify its restrictive construction by noting legislative history indicating that grandparents will be allowed to petition for visitation only in " 'carefully limited circumstances.' "[10] We agree that the Legislature did not intend to allow every grandparent to petition for visitation. We do not agree that the Legislature intended that standing questions should be resolved in a rigid manner without consideration of what might be in the child's best interests.

Caring for children is of paramount importance in the emic system established by the Legislature in the Child Custody Act. The etically different statutory provisions of the Child Custody Act do not modify that theme of this emic system.[11] The majority observes the etic differences between the introductory provisions of the act and the standing provisions

---

Construing the grandparent visitation statute consistently with this mandate does not mean all grandparents have standing. It does mean that this Court should undertake a substantive analysis of the standing provisions in the act to ensure a construction that is consistent with the act's intent. The majority's decision that standing is a "threshold" determination, to be made without consideration of the provisions of the Child Custody Act calling for liberal construction, "disregard[s] the intent of the Legislature," *ante* at 180, n 8, expressed without equivocation in the words of the act.

In *Olepa v Olepa*, 151 Mich App 690, 697; 391 NW2d 446 (1986), the Court said, "We will not construe the grandparent visitation provisions of the act so strictly that the object of the statute is destroyed"; "[a]pparently, the Legislature has decided that a grandparent should be allowed to seek visitation when a grandchild is officially no longer subject to the continual and uninterrupted custody of the parent who is the grandparent's child." *Id.* at 697-698.

[10] *Ante* at 177, quoting House Legislative Analysis, SB 439 and 440, November 18, 1982.

[11] These terms have been defined and differentiated in part as follows: "Two units are different etically when instrumental measurements can show them to be so. Units are different emically only when they elicit different responses from people acting within the system."

See Pike, *Language in Relation to a Unified Theory of the Structure of Human Behavior*, 2d rev ed (The Hague: Mouton & Company, 1967), p 38.

at issue, but ignores that, within the emic system established by the Legislature, no significance should be attributed to this distinction. The different provisions of the act comprise an emic unit. The grandparent visitation provisions cannot properly be construed without recognition of the paramount importance of protecting the child manifested throughout the emic system that is the Child Custody Act. The majority's failure "disregard[s] the intent of the Legislature,"[12] and, although it claims to be following the statute, constitutes a judicial rewriting of the act.

B

The act calls for liberal construction to determine the rights of the child first, the rights and duties of the parties second. If there is doubt concerning the act's coverage, it should be resolved to best safeguard the grandchild's rights. The mother's desire to avoid a hearing and possibly court-mandated grandparent visitation should be subordinated to the grandchild's interest in having communication with his grandparents if the trial court concludes, on a full evidentiary hearing, that such communication is in the grandchild's best interests.

It should be emphasized that this case concerns whether there should be a *hearing* concerning what is in the best interests of the grandchild, not whether visitation should be ordered regardless of the love, affection, or responsibility of these grandparents.[13]

---

[12] *Ante* at 180, n 8.

[13] At the conclusion of the hearing, if the court finds that it is in the best interests of the child to enter a grandchild visitation order, the court shall enter an order providing for reasonable visitation of the child by the grandparent by general or specific terms and conditions. [MCL 722.27b(3); MSA 25.312(7b)(3).]

The majority recites the mantra of "clearly and unambiguously" to reach a technical decision. This Court should, rather, engage in a substantive analysis, and determine if the reasons for allowing a grandparent visitation petition after divorce or legal separation also obtain when the parents were living together with the child without benefit of clergy before they separated. Because an order of filiation providing for custody and visitation is the substantive equivalent of an order providing for custody and visitation in a divorce or separation proceeding, this Court should conclude that there was a "child custody dispute" within the meaning of the act.

C

The majority contends that "includes" should be read as a word of limitation. Once again, we agree with the majority that a child custody dispute should be read more narrowly in the grandparent visitation context than in other contexts of the act. This general conclusion does not, however, absolve this Court from deciding whether an order of filiation providing

---

Contrary to the majority's assertion that we are presenting a "thinly disguised position that grandparent visitation should *always* be awarded to grandparents because it is *always* in the best interest of the grandchild," *ante* at 182, n 12 (emphasis added), an objective reading of this dissent indicates that standing would be granted only to grandparents who are in the same position as those specifically authorized to petition for visitation under the statute.

Simply upholding a grandparent's right to file a petition has no bearing on the task assigned to the trial court: to determine if the best interests of the child require that visitation be granted, or that it be denied. It is for the circuit court, consistent with the statutory definition of best interests of the child, to determine where on the continuum any particular visitation request should fall.

The majority's claim that this opinion attempts to deceive the reader with respect to its true agenda is without basis and reflective of the majority's inability to deal with this issue in its proper legal context.

for custody and visitation might be within the narrower categories of "child custody dispute" set forth in § 7b(2).

The majority does not consider whether an order of filiation following separation of an unmarried couple is the substantive equivalent of a divorce proceeding. The import of the statute is that grandparents have the right to ask a court for visitation when a traditional family setting has broken down. In such a case, the grandparents are more likely to be squeezed out of meaningful communication with the grandchild, particularly if their child is not the custodial parent of the grandchild. Then the person who would otherwise provide the normal link between the grandparents and the grandchild might believe the visitation he has been authorized by the court provides inadequate time for both him and the grandparent, and, therefore, decline to share with the grandparents the limited time available with the grandchild.

Section 7b(2) provides for situations where, because of death or placement of the child with a nonfamily member, grandparents might again be deprived of communication by a person not inclined to share the child, particularly if a personality or child-rearing conflict develops between the grandparents and the person who has custody. The underlying principle is to allow grandparents to petition for visitation when circumstances make it unlikely they will obtain an appropriate opportunity to visit the grandchild.

D

The acrimony often present in divorces was, of course, one of the primary concerns of the Legisla-

ture in enacting the grandparent visitation statute. To maintain a grandchild's continued communication with the extended family, the Legislature authorized petitions for visitation by grandparents likely to be caught in the middle of a difficult divorce.

Indiana has a similar statute, and an appellate court has explained the statutory rationale:

> In most instances, a parent who has custody of a child will allow grandparent visitation. When a parent loses his or her custodial rights as a parent, that parent has a reduced right to participate in child-rearing decisions. It is precisely when one parent has less legal control over the child that the grandparent-grandchild relationship may be jeopardized. A grandparent whose child is the noncustodial parent may have difficulty obtaining visitation with the grandchild. [*Lockhart v Lockhart*, 603 NE2d 864, 865 (Ind App, 1992).][14]

The same concerns of unreasonable denial of grandparent communication are present when the parents never marry, but an order of filiation that establishes custody and visitation has been entered. There are then the same risks of vindictiveness and limited visitation. The custody and visitation provisions in an order of filiation may indicate a breakdown in the relationship between the unwed parents that can fuel the same sort of disagreements and denial of visitation that occur in a divorce. In short,

---

[14] The majority asserts that this citation is inappropriate because Indiana's statute does not distinguish between married and unmarried parents. *Ante* at 190, n 23. We agree that the Indiana statute does not so distinguish, and this may explain why Indiana employed rational basis review and Michigan should employ heightened scrutiny. Nonetheless, the Indiana court's statement of the policy reasons for enacting a grandparent visitation statute are equally applicable to Michigan's grandparent visitation statute.

the reasons for allowing a petition for visitation in the context of a divorce, legal separation, or annulment are also present in the context of an order of filiation.[15]

---

[15] This dissent does not claim that "*any* grandparent 'squeezed out' . . . by the failure of the father or mother to grant visitation could claim that a functional divorce has occurred, separating him from the child . . . ." *Ante* at 180, n 8 (emphasis added).

Only because an order of filiation was entered that grants primary custody to the mother and limited visitation to the father is this case cognizable under the grandparent visitation statute.

If the grandchild's parents are still married and refuse to allow one or both sets of grandparents visitation, the statute provides no recourse. Similarly, before the entry of the order of filiation the grandparents here may have had no claim to seek visitation rights.

The majority sets up a straw man and thereby fails to acknowledge that, in this case, there is no substantive difference, for purposes of the grandparent visitation statute, between divorce or legal separation proceedings and an order of filiation. This dissent would not provide all grandparents a judicial forum to petition for visitation; only those grandparents in the circumstances described in the statute envisioned by the Legislature and parallel circumstances would be entitled to petition for visitation.

The majority also contends, "The fact that there are many situations in which the parents of an illegitimate child have never lived together as a family, despite an order of filiation, is one illustration of the obvious: an order of filiation is not the functional equivalent of a divorce." *Id.* Again, the majority misunderstands. The discussion of "traditional family settings" is not meant to limit the instances when a grandparent might seek visitation. It was simply to help explain the evils the Legislature was seeking to address in providing for grandparent visitation.

If the same problem of grandparent exclusion due to acrimony between the parents exists, regardless of whether the parents had previously lived together, the statute should be read to cover such a situation. The inquiry should not be narrowly focused on the nature of the parents' relations before the entry of the order of filiation, but rather on the more complex task of evaluating the nature of the relationships and whether the grandparents are at risk of losing communication with the grandchild, not because the parents choose to exclude the grandparents on the basis of a joint decision of what is in the child's best interests, but because the custodial parent refuses to allow visitation because of reasons unrelated to the appropriateness of visitation or the child's best interests.

Nonetheless, even if this Court limited grandparent claims to those where the parents had something resembling a "traditional family setting," an inquiry that courts are able to make, Dustin's parents would probably

E

The majority adverts to the Legislature's failure in 1991 to enact an amendment to the Child Custody Act that would have broadened the categories of grandparents entitled to petition for visitation.[16] The failure of the Legislature to enact a bill often means nothing. Perhaps the amendment was not enacted because the Legislature thought it unnecessary, believing the additions were already implied in current law. Perhaps other provisions in the same bill were unpalatable.[17] Other issues may have been considered more pressing so that, even if a majority could have been mustered for the changes, the bill did not come to a vote because those favoring the changes preferred to spend the time and political capital necessary to enact another bill. As Sutherland noted, "Action on a proposed amendment is *not* a significant aid to interpretation of an act that was passed years before."[18]

Because there are so many reasons for not enacting a postenactment amendment, no real guidance can be derived from such non-"decisions" of the Legislature.

---

qualify. They lived together with the child until shortly before Gina Frame sought the order of filiation.

[16] *Ante* at 179-180.

[17] The proposed amendment included provisions to allow a visitation petition "if the grandparent has provided an established custodial environment for the grandchild . . . at any time during the life of the grandchild"; "if a parent of a grandchild has withheld visitation opportunities with the child from a grandparent to retaliate against the grandparent for reporting child abuse or neglect to a governmental authority where the grandparent has reasonable cause to suspect child abuse or neglect"; and "if a parent of the grandchild is living separate and away from the other parent and grandchild for more than 1 year." SB 316.

[18] 2A Singer, Sutherland Statutory Construction (5th ed), § 48.18, p 369 (emphasis added).

F

Section 7b(3) provides in part:

> A grandchild visitation order shall not be entered for the parents of a putative father unless the father has acknowledged paternity in writing, has been adjudicated to be the father by a court of competent jurisdiction, or has contributed regularly to the support of the child or children.

The majority declares that subsection 3 is procedural only, thus reading in still another limitation for grandparents whose son is the putative father—having already required that the grandparents have standing as defined by the majority.[19] Under the majority's construction, the relevant portion of subsection 3 only applies to grandparents whose son has died, leaving behind an illegitimate child.

The only situation they posit when a grandparent would be able to petition, as contemplated by § 7b(3), for visitation of a child born out of wedlock, whose father is alive, is when the parents later marry and then divorce. Under the majority's cribbed reading, subsection 3 applies only when a putative father has died, thus construing out of § 7b(3) any meaning for an illegitimate grandchild whose parents, who never married, are still alive.

G

1994 PA 388 requires a circuit court to enter a custody and visitation award anytime an order of filiation is entered. The law amended sections of the Paternity Act and added MCL 722.717b; MSA 25.497(2), and provides:

---

[19] *Ante* at 181-182.

> If the court makes a determination of paternity and there is no dispute regarding custody, the court shall include in the order of filiation specific provisions for the custody and visitation of the child as provided in the child custody act of 1970, . . . being sections 722.21 to 722.29 of the Michigan Compiled Laws.

This provision references the *entire* Child Custody Act as the basis for custody decisions under an order of filiation. This includes § 7b concerning grandparent visitation. This most recent amendment should be read to modify the less expansive definition the majority finds to be more specific in § 7b(2).[20]

III

The Court of Appeals observed that the United States Supreme Court, in *Clark v Jeter, supra,* p 461, declared that generally "a level of intermediate scrutiny . . . has been applied to discriminatory classifications based on sex or illegitimacy," and said:

> To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective.

As set forth earlier at the conclusion of part I, no important governmental objective would be advanced by providing an opportunity for grandparent visitation when the union of the parents of a legitimate child has been dissolved, and denying such opportunity when the union of an illegitimate child's parents is dissolved. The act, correctly construed, is constitutional, but, as construed by the majority, denies equal protection of the laws.

---

[20] *Ante* at 176, n 3.

A

The majority contends that only the illegitimate child, and not the grandparents, can assert an equal protection claim entitled to midlevel scrutiny. The short answer is to be found in *Glona v American Guarantee & Liability Ins Co*, 391 US 73; 88 S Ct 1515; 20 L Ed 2d 441 (1968), where the United States Supreme Court held that a wrongful death statute that authorized actions by mothers of legitimate children, but did not authorize actions by mothers of illegitimate children, denied the *mother* of an illegitimate child the equal protection of the laws. The United States Supreme Court would not distinguish between a mother and a grandmother or grandparents in this regard.

In the companion case of *Levy v Louisiana*, 391 US 68; 88 S Ct 1509; 20 L Ed 2d 436 (1968), the Court held that a wrongful death statute that authorized actions in behalf of legitimate children, but did not authorize actions in behalf of illegitimate children, denied illegitimate children equal protection of the laws.

B

While the *Glona* opinion employed the language of rational basis scrutiny, a substantive evaluation of that and other cases challenging distinctions based on illegitimacy supports the conclusion of hornbook writers that the United States Supreme Court was actually applying midlevel scrutiny before it formally adopted that level of scrutiny for illegitimacy classifications in 1988:

> This standard of intermediate scrutiny, which falls between the rational relationship test and the strict scrutiny

test in terms of the strictness of the judicial review of clas-
sification, was not *formally* adopted for illegitimacy classifi-
cations until 1988. *Nevertheless, the Supreme Court's pre-
1988 decisions are consistent with this form of intermedi-
ate standard of review.* [Nowak & Rotunda, Constitutional
Law (4th ed), § 14.14, p 719  (emphasis added).]

This conclusion is bolstered by Justice O'Connor's
opinion for the Court in *Clark* announcing the formal
adoption of the heightened scrutiny standard. She
noted that midlevel scrutiny "generally has been
applied to discriminatory classifications based on sex
or illegitimacy."[21] There is no hint in that unanimous
opinion that the Court was adopting a higher stan-
dard than it had imposed before; it simply recognized
that its previous child illegitimacy decisions had in
fact, if not in name, been applying midlevel scrutiny.
See also *Pickett v Brown*, 462 US 1, 8; 103 S Ct 2199;
76 L Ed 2d 372 (1983),  "In view of the history of
treating illegitimate children less favorably than legiti-
mate ones, we have subjected statutory classifications
based on illegitimacy to a heightened level of
scrutiny."

*Levy*, decided with *Glona*, also supports this con-
clusion because it distinguished the "great latitude"
given social and economic legislation from the review
it was exercising in that case where the rights being
asserted "involve the intimate, familial relationship
between a child and his own mother."[22]

There is no reason to suppose that the United
States Supreme Court would distinguish between the

---

[21] 486 US 461.

[22] 391 US 71.

bonds of mother and child and grandparent and child for purposes of equal protection analysis in this case.

C

Because the Child Custody Act expressly provides for visitation by parents of putative fathers whose paternity has been adjudicated, the problem with which the Court struggled in *Parham v Hughes*, 441 US 347; 99 S Ct 1742; 60 L Ed 2d 269 (1979), and other cases there referred to, is not presented in the instant case.

We acknowledge that the state can establish some requirements for the father of an illegitimate child to establish paternity because of the unique problems of proof such an inquiry creates. Jay J. Franklin Nehls is unquestionably the father of Dustin, so the concerns dealt with in *Parham* are inapposite, and, in all events, the requirements of the act have been met— an order of filiation was entered. The *Parham* line of cases is not on point.

D

The majority contends that, "[n]owhere in the statute is a distinction made between children born in wedlock and children born out of wedlock."[23] We acknowledge that the act does not in terms draw a line between illegitimate and legitimate children. That line is drawn, rather, in the first part of the majority's opinion, where it holds, as a matter of statutory construction, that Dustin Nehls and those similarly situated, whose parents never marry, may not, during the

---

[23] *Ante* at 185.

lifetime of the father, be the subject of a grandparent's petition for visitation.[24]

That line, drawn by the majority, is drawn solely on the basis of the marital status of the parents of the grandchild.[25] The line so drawn solely burdens children whose parents have not, before or after the child's birth, legally solemnized their union.

While this line is not quite the same as the line drawn under earlier definitions of illegitimacy (where the child's status turned solely on the marital status of the parents at the child's birth), both parental groups are the same for equal protection analysis: As

---

[24] The majority argues that this result is unavoidable given the language of the statute. The majority refuses, however, to give full effect to the Child Custody Act's "liberal construction and application" requirement, or to read the statute in pari materia with subsection 3.

The reason advanced by the majority for deciding appellee satisfied none of the six ways of establishing standing delineated on page 181 of the majority opinion is that Dustin's parents never married. Despite the majority's strained attempts to find an example of an illegitimate child who qualifies under § 2(a), the majority can only fathom one instance: where an illegitimate child's parents later marry.

As the United States Supreme Court has held, this is an example that effectively only allows illegitimate children the protection of the statute if they have been legitimated, continuing to burden illegitimate children unconstitutionally absent a justification that passes heightened scrutiny. *Trimble v Gordon*, 430 US 762; 97 S Ct 1459; 52 L Ed 2d 31 (1977), and text accompanying n 22. However the majority categorizes it, the line it draws is based on the parents' marital status, over which Dustin has no control. The majority punishes him for his parents' decision not to marry.

The majority claims this dissent "improperly focuses solely on § 2(a) . . . ." *Ante* at 188, n 19. As the parties have conceded, however, and the majority recognizes as well, § 7b(2)(a) is the only prong of the grandparent visitation statute that is relevant in this case. We decline to address the other sections because they have no bearing on the issues. It does not matter if § 7b(2)(b) or some other portion of the grandparent visitation statute passes constitutional muster when what has been challenged is § 7b(2)(a).

[25] The majority recognizes that this portion of the statute "concededly uses the parents' marital status as a means of separating those grandparents who may seek visitation and those who may not." *Id.*

a result of state action, a child whose parents are not married—either at the time of birth or thereafter—is treated differently than a child whose parents have married.

Inheritance laws were often struck down as unconstitutional because they deprived a child who was born to unmarried parents the right to inherit, even though the child could be legitimated by, e.g., the subsequent marriage of the parents.

In *Trimble v Gordon*, 430 US 762, 774; 97 S Ct 1459; 52 L Ed 2d 31 (1977), the Court held:

> If the decedent had written a will devising property to his illegitimate child, the case no longer would involve intestate succession law at all. Similarly, if the decedent had legitimated the child *by marrying the child's mother* or by complying with the requirements of some other method of legitimation, *the case no longer would involve discrimination against illegitimates.* Hard questions cannot be avoided by a hypothetical reshuffling of the facts. If Sherman Gordon [the putative father in *Trimble*] had devised his estate to Deta Mona this case would not be here. Similarly, in *Reed v Reed,* 404 US 71 [92 S Ct 251; 30 L Ed 2d 225] (1971), if the decedent had left a will naming an executor, the problem of the statutory preference for male administrators of estates would not have been presented. The opinion in *Reed* gives no indication that this available alternative had any constitutional significance. We think it has none in this case. [Emphasis added.]

Because the majority's only example of how this statutory provision, as misconstrued by it, does not exclude illegitimate children, involves the same legitimization of the grandchild found irrelevant in *Trimble*, thereby excluding every illegitimate child whose parents never marry from the protection of § 2(a) of the grandparent visitation statute, the classification is

based on the legitimacy of the child, and needs to be evaluated under heightened scrutiny.

The majority apparently believes that, because it construes the "focus" of the act to be on the relationship of the grandparents to their children, rather than on the relationship of the grandchild to his parents, the classification's actual unconstitutional effect on illegitimates is somehow dissipated. The relevant constitutional inquiry, however, is not on the "focus" of the statutory language, but whether the act creates an invidious classification based on the legitimacy of the grandchild. Because the majority's construction of the grandparent visitation statute does so classify, it is subject to heightened scrutiny and, once analyzed under that framework, unconstitutional. Neither "benign" statutory language nor elaborate characterization removes the taint of an unconstitutional classification.

The majority's effort to distinguish this case, from *Trimble v Gordon,* underscores why constitutional law ignores superficial distinctions. The majority argues that the act discriminates on the basis of the marital status of the grandparents' child (the parent), rather than the marital status of the parents of the grandchild (the parent again).[26] Because it is precisely this marital status that determines whether the grandchild is legitimate or illegitimate, however it is described, the majority's distinction is one without a difference. The result is the same: illegitimate children whose parents never marry will never be the subject of a grandparent petition for visitation while both parents are alive, unlike legitimate children. A

---

[26] E.g., *ante* at 189, n 22.

court cannot properly blind itself to the actual result of a statutory classification on the basis that the "focus" of the words employed is not on the classification it produces.

E

Illegitimacy classifications are subject to heightened scrutiny because the United States Supreme Court has determined that it is not appropriate to penalize a child on the basis of the marital status of his parents, over which the child has no control. Those concerns are present here: Dustin and his grandparents are being deprived of the benefit of a best-interests hearing regarding grandparent visitation simply because his parents never married, over which he had no control. State-sanctioned deprivation of a statutory benefit on such a basis cannot be permitted absent a substantial relationship to an important governmental interest.[27]

Under the majority's construction of the grandparent visitation statute, a line is drawn between children whose parents have divorced or separated sometime during the child's lifetime and those whose parents never married but an order of filiation was entered.

The majority avoids discussing the propriety of drawing the line where it announces it shall be drawn by focusing on the rights of grandparents, rather than those of grandchildren. While only grandparents are given a right to petition for visitation, § 7b in particular and the Child Custody Act as a whole, is written

---

[27] See *Clark v Jeter, supra* at 461, and *Dep't of Civil Rights ex rel Forton v Waterford Twp Dep't of Parks & Recreation,* 425 Mich 173, 191; 387 NW2d 821 (1986).

for the benefit of children, including children who are
grandchildren. The grandparents are given the right to
petition for visitation because no two year old will
hire a lawyer to vindicate his interests in visiting with
his grandparents.

The image of such a grandchild-initiated lawsuit
strains credulity. Moreover, the grandchild would not
have standing under § 2. The grandparents are given
the right to petition because they have the incentive
to seek visitation, but grandparents will only succeed
if the visitation is in the *child's* best interests. If the
child would be harmed by grandparent visitation, no
scenario envisionable allows a court to order visita-
tion. The grandparents serve as legal surrogates for
the grandchild's interests. A young child may not be
deprived of that to which he is entitled simply
because an adult is authorized to advocate and vindi-
cate the child's best interests.[28]

---

[28] In *Levy v Louisiana*, the United States Supreme Court struck down a
Louisiana law that prohibited illegitimate children from suing for the
wrongful death of their mother. The Court did not regard it as significant
that the lawsuit was brought on the illegitimate children's behalf by an
adult.

The majority finds that grandparents do not serve as a legal surrogate
to protect the grandchild's interests (*ante* at 182, n 12), yet it offers no
other explanation for a statute that grants grandparents the right to peti-
tion in some circumstances, but prohibits them from succeeding unless it
is in the *grandchild's* best interests.

The error of the majority's conclusion is highlighted by its effect if
adopted in analogous areas of law. Shareholder derivative actions are
brought "to enforce the rights of the corporation against its directors and
officers." *Eston v Argus, Inc*, 328 Mich 554, 556; 44 NW2d 154 (1950). If
the corporation is not injured, the action cannot be sustained, even
though the shareholder brings the action to protect his own interests. If
the majority's analysis was taken seriously, courts would deny that the
corporation is the real party in interest simply because the law, recogniz-
ing the impossibility of encouraging a corrupt board of directors or
officers to bring suit against themselves, grants the shareholder the right
to sue.

The Legislature has presumed that in certain situations parental control will best protect the rights of the child, while in other instances state intervention is required. When communication with grandparents might be unreasonably cut off, the grandchild is usually in no position to take action. The grandparents are, so the act gives them the right to vindicate the grandchild's interest in having communication with the child's extended family.

F

The majority claims that there is an insufficient, "incidental effect" on grandchildren to warrant heightened scrutiny analysis. Again, it is the act that forces the inquiry into an analysis of the effect on grandchildren. That effect cannot be seen as merely incidental if the grandchild is being wrongfully denied communication with his grandparents.

The majority cites *Califano v Boles*, 443 US 282, 285; 99 S Ct 2767; 61 L Ed 2d 541 (1979), for the proposition that incidental effects on illegitimate children are insufficient to require heightened scrutiny.[29] In that case, a woman had been denied *"mother's insurance benefits"* because she was not divorced or widowed. The small effect that providing such benefits to the mother would have on the child prompted the Court to find any benefit to the child was limited and speculative. The Court observed that the Social Security Administration had not denied benefits to the illegitimate child.[30] Thus, the child was protected even though the mother was not.

---

[29] *Ante* at 189.

[30] The Court wrote:

*Califano* never reached the issue whether denying benefits to an illegitimate child would deny equal protection, a situation much closer to the facts in this case, because the Social Security Administration was directly helping the child.

No important governmental interest is advanced by denying illegitimate children the right to have their grandparents petition for custody. This not only fails heightened scrutiny, but, as the Court of Appeals noted, it fails rational basis scrutiny. "There appears to be no conceivable set of facts demonstrating that the legislative judgment reflected in the classification is rationally related to any legitimate governmental interest. We can envision no well-founded reason to treat the grandparents of children born out of wedlock differently if paternity is established."[31]

G

The majority, in finding a rational basis for the act, as it construes it, asserts that the Legislature "might have determined that *unlimited* resort to judicially enforced grandparent visitation might infringe on a parent's fundamental right to raise a child," or that, for other reasons, the Legislature did not desire broad and expansive jurisdiction.[32] This general statement is irrelevant to the classification at hand: Are illegitimate children whose parents have sought and received an order of filiation any different, for pur-

---

Thus, the focus of *these* benefits [mother's insurance benefits] is on the economic dilemma of the surviving spouse or former spouse; the child's needs as such are addressed through the separate child's insurance benefits. [*Califano* at 294.]

[31] 208 Mich App 416.
[32] *Ante* at 190-191.

poses of the grandparent visitation statute, than legitimate children whose parents have divorced or legally separated? There is no reason to distinguish the two cases, regardless of whether rational basis or heightened scrutiny review is employed.

The majority finds justification for a general policy of limiting visitation petitions, but this is too high a level of generality. The critical inquiry, for equal protection analysis, concerns the specific line drawn, not the general statutory framework. Under the correct analysis, the grandparent visitation statute, as construed by the majority, deprives Dustin Nehls and the Nehls grandparents and those similarly situated equal protection of the law.

The majority's other attempts at finding a rational basis rely on stereotypes of unwed parents. Even rational basis requires some analysis, particularly where illegitimate children are involved.[33] The majority forgoes analysis by relying on uninformed stereotypes and conjecture. The lengths to which the majority has gone to justify its construction of the statute demonstrates the weakness of its conclusions.

IV

We would affirm the judgment of the Court of Appeals and remand this case to the circuit court for a hearing concerning whether visitation with his grandparents is in Dustin's best interests.

CAVANAGH, J., concurred with LEVIN, J.

---

[33] See text accompanying n 22.