BRITTANY PARK APARTMENTS v HARRISON CHARTER
TOWNSHIP

Docket Nos. 82162, 82163. Argued December 7, 1988 (Calendar No. 5).
Decided July 24, 1989. Rehearing denied 433 Mich 1201.

Brittany Park Apartments and other owners and operators of
multiunit housing structures in Harrison Charter Township
brought an action in the Macomb Circuit Court against the
township, challenging the constitutionality of the township's
practice of charging a multiple minimum rate for water and
sewage to multiunit structures, such as the plaintiffs, who
choose not to meter individually each apartment unit, on the
ground that the practice results in a differential in the fees
charged residential multiunit housing structures and detached
single-family dwellings. The court, George R. Deneweth, J.,
granted summary disposition for the township. The Court of
Appeals, MICHAEL J. KELLY, P.J., and SULLIVAN and P.R.
JOSLYN, JJ., reversed in an unpublished opinion per curiam,
finding that although the ordinance has a legitimate purpose,
in practice the disparity of costs of services did not support the
goal of the ordinance (Docket Nos. 91529, 91588). The township
appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice
RILEY, and Justices CAVANAGH, BOYLE, ARCHER, and GRIFFIN,
the Supreme Court held:

Harrison Township Ordinance No. 100 is presumed to be
constitutional. The inclusion of multiunit housing within the
residential category for water and sewage service is reasonable
and is supported by sufficient evidence to show that there are
similarities in the characteristics of the users, all users are
treated equally, and any inequality in the ultimate fee charged
is tolerable.

1. A township may charge for services such as water and
sewage that it provides to a community and may impose

REFERENCES

Am Jur 2d, Constitutional Law §§ 735 et seq.; Municipal Corpora-
tions, Counties, and Other Political Subdivisions §§ 569-574.

Validity and construction of regulation by municipal corporation
fixing sewer-use rates. 61 ALR3d 1236.

rational classifications upon users as long as all within the class are treated alike. Where a classification is challenged on equal protection grounds, it is presumed to be constitutional, and the party bringing the challenge must show that the classification is not rationally related to a legitimate state interest, i.e., that it is discriminatory and arbitrary and without reasonable justification. While uniformity among users may be an ultimate goal, perfect equality is not the standard. Rather, persons within a class are to be treated objectively and reasonably. Further, the word "reasonable" is not susceptible of mathematical exactitude, but depends upon a comprehensive examination of all facts involved.

2. In this case, the classifications are not based on the type of structure to which water is pumped, but on the type of occupant and the purpose and nature of the use. The source of the dispute is not the rate system, which is structured to impose the same fees upon each single-family unit within a multiple structure as those imposed upon a single-family structure; rather, it is occasioned by the choice of the apartment owners not to meter individual apartment units and by the accommodation of the township in billing the owners on the basis of a single meter for an entire multiunit structure. Absent excess vacancies, the alternate billing method results in payment of a lesser amount per unit than that paid by the owner of a single residential unit for the same amount of water.

3. None of the facts presented in this case indicate that the rate system used to charge for residential water usage is unreasonable or irrational. The goal of the statute to establish uniform rates is clearly met; the rates within each classification are uniform even though a disparity exists between the ultimate amount each customer must pay for the same amount of water. However, when the difference is spread over each residential unit, the law operates equally upon each unit; there is no appreciable difference in the ultimate fees charged to users.

Justice LEVIN, writing separately, stated that while the ordinance is not unconstitutional on its face, it may in fact impose invidious burdens, in violation of the Equal Protection Clause, on the owners of apartments where there are significant vacancies. Because the factual record is too sparse to permit assessment, the case should be remanded to the trial court to provide the plaintiffs an opportunity to amend their complaint and to seek to establish that the ordinance as applied or in effect so discriminates.

Reversed.

TOWNSHIPS — WATER AND SEWERAGE — USER CLASSIFICATIONS —
    EQUAL PROTECTION.

A township may charge for services, such as water and sewage,
    provided to a community and may impose rational classifica-
    tions upon users as long as all persons within a class are
    treated alike; where a classification is challenged on equal
    protection grounds, it is to be presumed constitutional, the
    party bringing the challenge having the burden of showing that
    the classification is discriminatory and arbitrary and not ra-
    tionally related to a legitimate state interest.

*Evans & Luptak* (by *D. Michael Kratchman* and *John A. Kullen*) and *Friedman & Friedman, P.C.* (by *Robert Friedman* and *Susan S. Friedman*), for the plaintiffs.

*Peterson, Hay & Comsa, P.C.* (by *Mark L. Pope* and *David Comsa*), for the defendant.

Amicus Curiae:

*Bauckham, Reed, Sparks, Rolfe & Thomsen, P.C.* (by *Patricia Mason*), for Michigan Townships Association.

BRICKLEY, J. The dispute in this case requires us to examine the constitutionality of Harrison Township Ordinance No. 100 which establishes inter alia the rate structure for the municipality's water and sewage system. Leave to appeal was granted limited to:

(1) whether defendant's rate structure charging a base rate per residential unit denies plaintiff apartment complexes equal protection of law; and
(2) whether defendant's rate ordinance which limits no charges for periods of vacancy to units served by separate meters denies plaintiffs equal protection of law.[1] [430 Mich 891 (1988).]

[1] The action was originally filed in Macomb Circuit Court by Brit-

We hold that the ordinance is reasonable and rationally related to the objectives of the township. Accordingly, the ordinance is constitutional and plaintiffs were not denied equal protection of the law.

In 1968, the Charter Township of Harrison assumed the ownership and operation of the township's water and sewage system originally operated by the City of Mt. Clemens. At the same time, it adopted the rate structure followed under the city ownership enacting Township Ordinance No. 100. The categories of billable users under the ordinance include: (1) residential users, (2) commercial users, (3) industrial users, and (4) public authority. The ordinance defines a single-family dwelling unit for billing practices as

> any structure or part thereof containing within its separate confines all necessary facilities for the use thereof as a dwelling place for human habitation, and including, but not necessarily limited to, a single family home, a dwelling unit within a multiple unit housing structure, and a mobile home (trailer coach). [Harrison Township Ordinance No. 100, § 2.6(5)(A).]

Plaintiffs are owners and operators of multiunit housing structures located in Harrison Township. According to the definitions plaintiffs are included within the residential customer billing category.

Pursuant to the ordinance, all single-family dwelling units are charged a quarterly minimum

tany Park Apartments in 1979. Brittany Park Apartments sought certification as a class action, the class to be comprised of owners of constructed apartment complexes within the Township of Harrison. The trial court denied plaintiffs motion to certify. Subsequently, the named plaintiffs in this action joined with Brittany Park Apartments in pursuing the issues raised in the original complaint. All plaintiffs, except Metro Tower Associates, are represented by the same attorney. Metro Tower Associates argues only the second issue raised on appeal.

rate for water and sewage consumption. Water consumed in excess of this minimum usage is billed at a declining block rate.[2] When an apartment owner chooses not to individually meter each apartment unit, making it impossible to separately bill each unit, it is charged the minimum fee, multiplied by the number of units, but is allowed to combine all of the water usage in excess of the aggregate minimum fee as though the apartment building was one unit.

Plaintiffs challenge the constitutionality of defendant's practice of charging a multiminimum rate because, it is claimed, it results in a differential in the billing rates of residential customers. Brittany Park argues that the disparate treatment among the class of residential users is the result of the establishment of two subclasses within the residential category. The first class is that of multiunit housing structures that have only one meter, but are charged an aggregate minimum rate. The second subclass is that of a detached single-family dwelling which is charged only one minimum rate. Plaintiffs assert that the removal of the multiple-minimum charge for each unit would

[2]   CONSUMPTION RATES. (measured by water meters) First 1200 cubic feet of water used per quarter—$11.79 per quarter

Said charge shall be the minimum quarter consumption rate to each *single family* dwelling unit.

For all water used in excess of 1200 cubic feet per quarter: Next 1800 cubic feet (per 100 cu. ft.)—$0.94; next 9000 cubic feet (per 100 cu. ft.)—$0.86; over 12,000 cubic feet (per 100 cu. ft.)—$0.79 [Harrison Township Ordinance No. 100, § 2.5.]

SEWER RATES AND CHARGES: (based upon water use) first 1200 cubic feet of water used per quarter = $18.69 per quarter.

Said charge shall be the minimum quarterly sewage use rate for each single family dwelling unit.

For all sewage flow in excess of 1200 cubic feet per quarter, the charge shall be at the rate of $1.36 per 100 cubic feet. [Harrison Township Ordinance No. 100, § 2.6.]

eliminate the disparity in the billing between multiple- and single-unit dwellings.

Further, Metro Towers argued that the rate structure violates its equal protection rights because there was no provision within the ordinance to account for the vacancy of a unit within an apartment complex. The differential treatment results from the fact that a detached single-family dwelling can terminate its service by having its meter shut off, while multihousing structures not individually metered are not afforded such an alternative.

The Court of Appeals accepted the arguments submitted by plaintiffs and reversed the trial court's order granting summary disposition in favor of defendant. The Court of Appeals found that although the ordinance has a legitimate purpose, in practice the rate structure is not fair or uniform when an examination of the rates showed that apartment owners were paying more for the same service than other members within the class of residential customers. The Court concluded that the disparity in the costs of services between apartment owners and single-dwelling units coupled with the fact that the township incurred no additional expenses in providing water and sewage service to such customers, did not support the legitimate goal of the ordinance. The Court of Appeals stated that "[i]f plaintiffs are in the same classification as single family homes, the rates should be equal."[3] We find that the Court of Appeals based its rationale and conclusion on erroneous assumptions about both the classification and the treatment of those within it.

The township is the sole source of water within

[3] *Brittany Park v Harrison Charter Twp*, unpublished opinion per curiam of the Court of Appeals, decided September 14, 1987 (Docket Nos. 91529, 91588).

the community and it is undisputed that the municipality has a right to charge for the services it provides to the community. Further it has the right to rationally impose classifications upon its users so long as all persons within the class are treated alike. *Rouge Parkway Associates v City of Wayne,* 423 Mich 411; 377 NW2d 748 (1985). The standard of review of the classification under an equal protection challenge is that the ordinance is presumed constitutional. The burden is upon the party challenging the legislation to show that the classification established is not rationally related to a legitimate state interest. See, generally, *Cook Coffee Co v Village of Flushing,* 267 Mich 131; 255 NW 177 (1934), and *Detroit v Highland Park,* 326 Mich 78; 39 NW2d 325 (1949). Under the rational basis test there must be a showing that the ordinance is discriminatory and arbitrary, and that its classifications are without reasonable justification.

There is no dispute over the applicable test to be applied in this case. It is derived from this Court's decision in *Alexander v Detroit,* 392 Mich 30; 219 NW2d 41 (1974), wherein we enumerated a two-part test to be applied in an equal protection challenge to a legislative enactment. The questions to be considered are:

(1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation?
(2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind? [*Id.* at 35-36. Citations omitted.]

Reaffirmed in *Rouge Parkway Associates v City of Wayne, supra.*

Uniformity among users is the ultimate goal

strived for by the ordinance.[4] The plaintiffs do not complain about the distinction between the separate classifications, but rather that the users classified as "residential" are not treated uniformly within their classification. The standard of rationality requires that persons within a class be treated objectively and reasonably. Reasonable, however, does not mean exact. "Perfect equality among users is not the standard of municipal duty in fixing sewer rates." 61 ALR3d, *Municipalities— Sewer use rates,* § 3[d], p 1259.

The word reasonable is " 'not subject to mathematical computation with scientific exactitude but depends upon a comprehensive examination of all factors involved, having in mind the objective sought to be attained in its use.' " *Land v City of Grandville,* 2 Mich App 681, 689; 141 NW2d 370 (1966),[5] quoting *Meridian Twp v East Lansing,* 342 Mich 734; 71 NW2d 234 (1955).

Classifications utilized by this ordinance, residential, commercial, etc., are based not on the structure to which water is pumped, but on the type of occupant and the purpose and nature of its use. Having built the residential rate structure on the classification of a single-family dwelling and "any structure or part thereof containing within

---

[4] The purpose of the ordinance was clearly set forth by the Harrison Township Board in § 2.2 of Ordinance No. 100 which provides:

It is hereby declared to be the intent and purpose of the Township Board to fix and establish reasonable and uniform rates and charges applicable to various classifications of users and beneficiaries of the services furnished by the combined system, so as to provide funds to as far as possible (a) operate and maintain said combined system in a reasonable, proper and efficient manner, and (b) pay the contractual obligations of the Township.

[5] The facts and issues raised in *Grandville* are similar to those presented here, and we find the opinion of that Court to be most persuasive.

its separate confines all necessary facilities for the
use thereof as a dwelling place for human habita-
tion," the billing of individual apartment units on
the same basis and at the same rate as that of a
single-family dwelling cannot be questioned. As a
matter of fact, the city ordinance rate system is
structured to provide the same billing and rate to
each single-family unit within a multiple structure
on the basis of the water usage metered to that
unit as would apply to a single-family structure.
This then is not the source of the dispute.

Rather it is occasioned by the fact that plaintiff
apartment owners have chosen not to individually
meter their apartment units, claiming it would be
an "architectural nightmare" to do so. The defen-
dant has accommodated this reality by a variation
which allows the apartment building owners to be
billed by the use of a single meter, thus saving
them the costs of the individual metering. There-
fore, consistent with its single-family residential-
family classification, as previously described, it
charges the apartment owner an aggregate mini-
mum fee based on the number of units served and
the same declining rate for water in excess
thereof.

The apartment owners having been accommo-
dated for the lack of individual meters in their
apartment buildings by a plan that is intended to
achieve the same result as though the units were
individually metered, they now, for purposes of
advancing their claim, inject themselves into the
equation as a ratepayer and posit that they are
not being treated the same as individual residen-
tial units, which would entitle them in effect to
have their entire apartment buildings classified as
a single-family dwelling with only one minimum
fee per building structure. Having secured an
exemption from the individual meter requirement

for each residential unit within the apartment structure on the basis of the unique problems of individually metering apartment units, they now seek to stand in the shoes of an owner of a single-family residence and to have the township disregard the fundamental uniformity of its own classification for "single family homes."[6]

It is from this posture that the plaintiff apartment owners have produced figures showing that because of the aggregate fee they pay more for water service to their buildings than a homeowner would for the same amount of water. What they disregard, and convinced the Court of Appeals to disregard,[7] is that this can only be demonstrated when the apartment owner is allowed to consider the composite of all of his apartment units as one dwelling unit. When seen in its true light, the apartment owner is paying as agent for all of the individual residential units within his building. In light of this reality, he has the same standing and is paying at the same rate as the owner of a block of individual homes who has each home metered in his, the owner's, name.

What the plaintiffs also disregard, but which

---

[6] The Court of Appeals found:

> If the goal of the water rates is for each customer to pay his fair share, as defendant claims, such disparity should not exist. If plaintiffs are in the same classification as single family homes, the rates should be equal.

If we accept this fallacy, as the Court of Appeals did, then, of course, it does appear that there is mistreatment of the apartment owner. The fact is, however, that the city has decided to treat all individual residential units alike, not to equate owners of multiunit structures with single-family units.

[7] However, when the rates the plaintiffs have paid are examined, the rates cannot be said to be fair or uniform when compared to the rates paid by single family homes. The apartment owners are being forced to pay more for the same services as the other members of the residential classification. [*Brittany Park Apartments, supra.*]

amicus curiae Michigan Townships Association amply demonstrates, is that plaintiffs as the payers for multiple individual residential users, are not paying more than the owner of a single residential structure. They are, in the absence of excess vacancies, actually paying at a lesser amount *per unit* than the owner of a single residential structure because the apartment owner is given under the ordinance an advantage not given to the former. (See Appendix). While the plaintiff apartment owner is charged a minimum fee for each unit, the water usage in excess of the aggregate minimum fee is not similarly divided by the number of units. This results in pushing a greater percentage of the water usage into the high volume declining rate structure. Thus, the apartment owner in this regard is paying less per unit than a person paying the bill for an individual residential structure using the same amount of water.

In a separate argument, plaintiff Metro Towers Associates has demonstrated one disadvantage of the rate structure as it applies to multiple-dwelling units that have not been individually metered. Water service can only be discontinued by shutting off the meter. Multiple-structure units that pay through a single central meter have not been able to get credit for vacancies. Therefore they continue to pay a minimum rate for vacant units that are, presumably, not using water, even though water is available in those units.

The net result then is that apartment owners who choose not to meter the units individually operate under a subclassification that makes it possible for them to secure and pay for water services in an alternate manner. That manner, as described by amicus curiae Townships Association, has one advantage and one disadvantage. The advantage, as has been described, is the ability to

pay for water over the minimum requirement per unit for all of the units as though it were one unit, thereby pushing the cost of water over the aggregate minimum into the lower cost structure. The disadvantage is the added cost to apartment owners if, and to the extent, there are vacancies. While plaintiff Metro Tower Associates claims a substantial number of vacancies, the record does not indicate overall what the average vacancy rate is for plaintiffs as a whole and whether and to what extent increased costs therefrom are offset by the increased savings from the volume rate on combined, rather than per unit, excess water over the aggregate minimum rate.

The plaintiffs' suggested solution is that the township transform the apartment owner into a single residential unit owner paying only one minimum charge, and paying for all of the excess water at the declining rates. Obviously this solution would shift the necessary minimum inequities that must exist in any rate system to a different class of ratepayers because individual apartment unit dwellers would be substantially relieved of the minimum fee requirement.[8] It has not been shown on the record that such a change would bring about a more equitable distribution of costs among all of the ratepayers.

Plaintiffs also suggest that if this change is not effectuated,[9] the vacancy disadvantage should be rectified by the township by undertaking whatever additional costs are required to introduce a system and surveillance that would, in the absence of a

---

[8] By eliminating all but one minimum rate, the owner would be paying for the same amount of water at considerably lower rates per unit because water covered by a minimum fee is billed at the most expensive rate. See n 2.

[9] Obviously if the multiple minimum fee is eliminated, the vacancy problem ceases to exist because all water use is monitored at the central meter.

meter shutoff, make it possible to be sure when and for what period of time vacancies exist. Obviously, the defendant would also have to satisfy itself that water does not flow from those vacant units. Again, it has not been shown that this will not merely shift the costs to yet another group, other than the plaintiffs.

We assume that apartment structures are able to achieve certain economies of scale by higher land density and common outside areas that provide economical advantages to apartment living. It is not surprising, then, that there might also be some disadvantages. One of the disadvantages seems to be the difficulty of providing individual water meters for units in multiple-unit structures. Rather than forcing this added cost on the construction of apartment buildings, the city has made it possible for apartment owners to assume the responsibility for paying for all of their residents by the several changes and methods described above. Apparently the plaintiff apartment owners consider compliance with that system to be more advantageous than providing individual meters, which would seem to provide more perfect uniformity among all residential ratepayers, if that indeed is what the plaintiffs seek. However, what the plaintiffs seek here is further adaptation by the city that could very well have the advantage not of only saving apartment owners the cost of providing a meter that all individual residential dwellings must provide, but would lower the water and sewer rate advantage for apartment dwellers below whatever advantage already exists, at least where there is not an inordinate occupancy problem.

There is nothing in the law of constitutional equal protection that suggests the necessity for such an accommodation. More importantly, there

is nothing in the facts of this case that indicates that the rate system used to charge for residential water usage is unreasonable or irrational. The goal of the statute which is to establish uniform rates is clearly met because the rates within each classification are uniform even though a disparity does exist between the ultimate amount each customer must pay for the same amount of water. However, when the difference is spread over each user (i.e., each residential unit),[10] the law operates equally upon each individual unit. There is no appreciable difference in the ultimate fee to the users within the residential category. (See Appendix.) Although there may be some difference in the ultimate fee paid, the classification is rational and not arbitrary in light of the use made of each unit within the structures. All that is required under the Equal Protection Clause is that the rate structure be rationally related to the classification. That test has been met here.

### CONCLUSION

The inclusion of multiunit housing within the residential category is reasonable and supported by sufficient evidence to show that there are similarities in the characteristics of the users.

Multiunit housing structures receive both a disadvantage and an advantage from the rate system. All users of water within the classification are treated equally, and any inequality in the ultimate fee charged is tolerable.

The ordinance is presumed constitutional, and plaintiffs have failed to sustain their burden of showing that the ordinance is based on an arbi-

---

[10] The rate for the service is passed onto the tenant and, thus, it is reasonable to charge each tenant within a multiunit structure the minimum fee for consumption of water and sewage.

trary and unreasonable classification. The Court of Appeals decision is reversed.

RILEY, C.J., and CAVANAGH, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with BRICKLEY, J.

### APPENDIX

The amicus curiae, Michigan Townships Association, offers the following hypothetical situation which we find is an appropriate example to support our conclusions.

Assume:    (1) A multiple-unit housing structure with 30 dwelling units or apartments therein

(2) The structure is serviced by *one* meter

(3) Each unit averages *2500* cubic feet of water per quarter for a total of 75,000 cubic feet of water in a quarter. (2500 × 30 = 75,000)

The owner of the multiple-unit housing structure would be charged, under the ordinance, as follows:

Aggregate Minimum

| 1200 | cubic feet | $11.79 | fee per unit |
|------|------------|--------|--------------|
| × 30 | apartment units | × 30 | apartment units |
| 36,000 | cubic feet minimum | $353.70 | |

| | Cubic feet | Fee/100 cubic feet | Cost |
|---|---|---|---|
| Mininum per quarter | 36,000 | | $353.70 |
| Next 1800 | 1,800 | $ 0.94 | $ 16.92 |
| Next 9000 | 9,000 | $ 0.86 | $ 77.40 |
| All over 12,000 | 28,200 | $ 0.79 | $222.78 |
| TOTALS | 75,000 | | $670.80 |

Total per apartment unit:

| Cubic feet per apartment unit | Cost per apartment unit |
|---|---|
| 75,000 | $670.80 |
| ÷    30 | ÷    30 |
| 2,500 | $ 22.36 |

A single-family home utilizing 2500 cubic feet of water in a quarter (i.e., the same water usage averaged by each dwelling unit in the multiple unit housing structure) would be charged as follows:

|  | Cubic feet | Fee/100 Cubic Feet | Cost |
|---|---|---|---|
| Minimum | 1,200 |  | $11.79 |
| Next 1800 | 1,300 | $ 0.94 | $12.22 |
| TOTALS | 2,500 |  | $24.01 |

We add to the hypothetical situation by showing the advantage plaintiff receives by being allowed to aggregate the water consumed for benefit of the declining block rate.

Assume:  Meter reads 75,000 cubic feet

| 75,000 | cubic feet |
| ÷   30 | apartment units |
| 2,500 | average usage per unit |

| $ 24.01 | Total charge per single family home based on 2500 cubic feet (see above) |
| ×   30 | apartment units |
| $720.30 | Total for multiunit structure |

Compare $670.80   aggregate minimum and declining rate (see above).

Difference $49.50   Savings based on aggregation of excessive water consumed for purposes of the declining block rate structure.

LEVIN, J. (*separate opinion*). I agree with the majority that the ordinance is not unconstitutional on its face. It may, however, in fact impose invidious burdens, in violation of the Equal Protection Clause, on the owners of apartments where there are significant vacancies.[1] The factual record is too sparse to permit any assessment in that regard.

I would remand to the trial court to provide the plaintiffs with an opportunity to amend their com-

[1] Nowak, Rotunda & Young, Constitutional Law (2d ed), ch 16, § I D, p 600.

plaint[2] if they wish to do so and to seek to establish that the ordinance as applied or in effect invidiously discriminates against them in violation of the Equal Protection Clause.[3]

---

[2] See *Brown v Laitner*, 432 Mich 861, 870, n 4 (1989) (opinion of LEVIN, J.).

[3] Cf. *Dukesherer Farms, Inc v Director, Dep't of Agriculture (On Remand)*, 405 Mich 1, 46-50; 273 NW2d 877 (1979) (opinion of LEVIN, J.).