MUSKEGON AREA RENTAL ASSOCIATION v CITY OF MUSKEGON

Docket No. 217854. Submitted May 3, 2000, at Grand Rapids. Decided
     December 26, 2000, at 9:05 A.M. Leave to appeal sought.

     The Muskegon Area Rental Association and two of its members,
     Roger Nielsen and Arthur Jasick, brought an action in the Mus-
     kegon Circuit Court against the city of Muskegon, seeking to have
     an ordinance provision declared unenforceable. The plaintiffs
     alleged that a section in the city's property maintenance code that
     conditions the issuance of a certificate of a rental dwelling's com-
     pliance with the property maintenance code on the rental dwelling
     owner's full payment of all previously billed property taxes is pre-
     empted by the General Property Tax Act (GPTA), MCL 211.1 *et seq.*;
     MSA 7.1 *et seq.*, conflicts with the city's charter, and denies mem-
     bers of the association substantive due process and equal protec-
     tion. On cross-motions for summary disposition, the court, Timothy
     G. Hicks, J., granted summary disposition in favor of the city. The
     plaintiffs appealed.

          The Court of Appeals *held*:

          1. The challenged ordinance is not preempted by subsection
     60(2) of the GPTA, MCL 211.60(2); MSA 7.104(2), which governs tax
     sales. Subsection 60(2) does not prohibit the tax collection effort
     embodied by the ordinance. The ordinance does not prohibit tax
     sales from occurring under § 60. Because a certificate of compli-
     ance is valid for four years, an owner of rental property may obtain
     both the certificate and delay payment of property taxes for the
     three years "permitted" in the statute before a tax sale would
     occur.

          2. The challenged ordinance is authorized by the Muskegon city
     charter and does not conflict with the charter. The ordinance does
     not conflict with the charter provision that requires the city trea-
     surer to collect fees, penalties, and interest on taxes in accordance
     with state law. The ordinance does not change the party assigned
     to collect the property taxes; rather, the ordinance requires only
     that the property taxes be paid before an owner of a rental dwell-
     ing may obtain a certificate of compliance.

          3. The challenged ordinance does not violate the plaintiffs' right
     to substantive due process under the federal and state constitu-

tions. The ordinance is not unreasonable, arbitrary, or capricious. There is a rational relationship between the requirement that any delinquent property taxes be paid before a certificate of compliance can be issued for a rental dwelling and the city's legitimate interest in providing safe and habitable dwellings to its citizens in view of uncontroverted evidence that properties that revert to the state because of tax delinquency are usually dilapidated rental properties.

4. The challenged ordinance violates the plaintiffs' right to equal protection under the federal and state constitutions. The ordinance treats rental property owners differently from other businesses. Other businesses are required to obtain a certificate of registration, one of whose prerequisites is that all outstanding debts to the city be paid, except real property or income taxes. The ordinance impermissibly treats certain components of the same class (businesses) differently. The ordinance does not include and affect all persons of the same class (businesses) and extends immunities or privileges to an arbitrary class (businesses who are not owners of rental properties and who are immune from the requirement of paying real property or income taxes before obtaining a certificate of registration), while denying the exact immunities and privileges to others of a like kind (businesses who are owners of rental properties and are required to pay all previously billed property taxes before obtaining a certification of compliance). In the absence of a material factual dispute concerning the equal protection issue, the plaintiffs are entitled to judgment as a matter of law with respect to the equal protection claim. The case must be remanded for entry of judgment in favor of the plaintiffs.

Affirmed in part, reversed in part, and remanded.

BANDSTRA, C.J., concurring in part and dissenting in part, stated that the ordinance at issue is not preempted by state law, does not conflict with the city charter, does not deny the plaintiffs substantive due process, and does not violate equal protection. The equal protection challenge to the ordinance is properly reviewed under the rational basis test. Under this test, the legislation is presumed to be constitutional and the challenger must show that the legislation is arbitrary and wholly unrelated in a rational way to a legitimate governmental purpose. In this case, the plaintiffs have not shown the ordinance to be arbitrary and wholly unrelated to a legitimate governmental purpose. The city, on the other hand, has shown that it seeks to reduce the fiscal, safety, health, and welfare problems that result disproportionately from rental properties by requiring payment of property taxes before properties can be

rented. The trial court's grant of summary disposition for the city should be affirmed on all grounds.

1. MUNICIPAL CORPORATIONS — ORDINANCES — STATE LAW — PREEMPTION.

A municipal ordinance is preempted by state law if the state statute completely occupies the field that the ordinance attempts to regulate, or the ordinance directly conflicts with the statute.

2. CONSTITUTIONAL LAW — SUBSTANTIVE DUE PROCESS — MUNICIPAL ORDINANCES.

Substantive due process requires that ordinances, or any other police power legislation, must be reasonably exercised, that the regulation must not be unreasonable, arbitrary, or capricious, and that the means selected must have a real and substantial relation to the object sought to be attained (US Const, Am XIV; Const 1963, art 1, § 17).

3. CONSTITUTIONAL LAW — EQUAL PROTECTION — MUNICIPAL ORDINANCES.

A court deciding whether classifications established by a municipal ordinance violate equal protection must determine whether the classifications are based on natural distinguishing characteristics and bear a reasonable relationship to the object of the ordinance and whether all persons of the same class are included and affected alike or whether immunities or privileges are extended to an arbitrary or unreasonable class while denied to others of a like kind (US Const, Am XIV; Const 1963, art 1, § 2).

*Williams, Hughes, Corwin & Sininger, LLP* (by *Douglas M. Hughes* and *Enrika L. F. McGahan*), for the plaintiffs.

*Parmenter O'Toole* (by *G. Thomas Johnson*), for the defendant.

Before: BANDSTRA, C.J., and JANSEN and WHITBECK, JJ.

JANSEN, J. Plaintiffs appeal as of right from an order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10) and an order denying their motion for reconsideration pursuant to MCR 2.119(F)(3). We affirm in part, reverse in part, and remand for further proceedings.

This case involves the constitutionality of one of defendant's ordinances, more specifically a property maintenance code, amended in May of 1997. Plaintiff Muskegon Area Rental Association (MARA) is an organization that consists of approximately 145 members who own about 2,000 rental dwellings in the city of Muskegon. Approximately forty-five percent of the single-family dwellings in the city are rental properties. Plaintiffs Roger Nielsen and Arthur Jasick are two of the members of the MARA and are property owners in the city. Defendant has promulgated a property maintenance code, within its city ordinances, containing standards for the maintenance of all existing structures and for the building of any new structures or additions to structures in the city. Part of the property maintenance code requires a property owner to obtain a certificate of compliance before the owner may rent the property. The failure to obtain a certificate of compliance constitutes a civil infraction.

On May 27, 1997, defendant amended its requirements under the property maintenance code for obtaining a certificate of compliance for a rental dwelling. The amendment included the requirement that, before a property owner could obtain a certificate of compliance, the owner had to pay all amounts due concerning the properties, including property taxes. The relevant section provides:

The City shall issue a certificate of compliance for a rental dwelling when the city finds that the rental dwelling, its units and accessory structures and yards comply with the standards set forth in this code; however, no certificate of compliance shall be issued until all of the following fees and debts to the city have been paid in full:

(1) all previously billed property taxes;

(2) all current or past due special assessment installments;

(3) water or sewer bills outstanding;

(4) all charges against the property for mowing, cleanup, weed or debris removal and similar charges by the city;

(5) any fees, fines, penalties or debts of any sort arising from the provisions or enforcement of the Property Maintenance Code. [Muskegon Code of Ordinances, § 4-83(b).]

Plaintiffs filed this action on April 3, 1998, challenging the validity and constitutionality of this ordinance. Plaintiffs specifically challenged the requirement that all previously billed property taxes must be paid before defendant will issue a certificate of compliance for a rental dwelling. In their complaint, plaintiffs requested that the trial court declare subsection 4-83(b)(1) to be unenforceable and unconstitutional because (1) it was preempted by state law, (2) it conflicted with the city's charter, (3) it failed to afford substantive due process to the members of the MARA's, and (4) it did not afford equal protection of the law to the members of the MARA.

Plaintiffs subsequently moved for summary disposition; defendant answered and also moved for summary disposition. The trial court ultimately granted summary disposition in favor of defendant. The trial court found that the ordinance was not preempted by state law, did not conflict with defendant's charter, did not deny plaintiffs substantive due process, and did not deny plaintiffs equal protection of the law. Plaintiffs appeal from this decision.

"A motion for summary disposition under MCR 2.116(C)(10), which tests the factual support of a claim, is subject to de novo review." *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999).

In reviewing a motion brought under MCR 2.116(C)(10), a court is to consider the pleadings, affidavits, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in a light most favorable to the party opposing the motion. MCR 2.116(G)(5); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The court's task is to review the evidence and all reasonable inferences from it and determine whether a genuine issue of any material fact exists to warrant a trial. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A court may grant the motion if the record evidence shows that there is no genuine issue with regard to any material fact and the moving party is entitled to judgment as a matter of law. *Quinto, supra*, p 362.

Plaintiffs first argue that the ordinance is preempted by the General Property Tax Act (GPTA), MCL 211.1 *et seq.*; MSA 7.1 *et seq.* Plaintiffs assert that MCL 211.60; MSA 7.104 preempts the ordinance. This statute provides in relevant part:

> (2) Except as otherwise provided in this subsection, on the first Tuesday in May in each year, a tax sale for taxes levied before January 1, 1999 shall be held in the counties of this state by the county treasurers of those counties for and in behalf of this state. *At the tax sale, property delinquent for taxes assessed in the third year preceding the sale or in a prior year shall be sold for the total of the unpaid taxes of those years.* Not sooner than April 30, 2000 and April 30, 2001, the county treasurer may cancel the tax sale scheduled to take place on the first Tuesday in May 2000 and the first Tuesday in May 2001, respectively, if there are no outstanding bonds or notes issued by a county pursuant to sections 87b to 87e with respect to the delinquent taxes for which the sale is being conducted. [MCL 211.60; MSA 7.104 (emphasis added).]

"[A] municipal ordinance is preempted by state law if (1) the statute completely occupies the field that the ordinance attempts to regulate, or (2) the ordinance directly conflicts with a state statute." *Rental Property Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997).

We agree with the trial court that the ordinance is not preempted by the GPTA for the reasons stated by the trial court. First, as noted by the trial court, nothing in MCL 211.60; MSA 7.104 prohibits efforts to collect delinquent taxes. Further, MCL 211.40; MSA 7.81 provides that all property taxes become a debt due directly from the property owner to the city, and there are different methods that may be utilized to collect delinquent taxes, such as lien foreclosure or the seizure and sale of the taxpayer's personal property. See, e.g., *Detroit v Walker*, 445 Mich 682, 693-694; 520 NW2d 135 (1994). Additionally, as noted by the trial court, the ordinance does not prohibit tax sales from occurring under MCL 211.60; MSA 7.104; rather, the ordinance merely provides an alternative means by which defendant may collect the delinquent taxes owed to it. As stated in *Walker, supra*, p 690, home rule cities, such as defendant, may exercise all powers not expressly denied and "are empowered to form for themselves a plan of government suited to their unique needs, and, upon local matters, exercise the treasured right of self-governance." Most importantly, as also stated by the trial court, the ordinance applies only when the taxes are delinquent and a certificate of compliance is sought. Because the certificate of compliance is valid for four years, an owner of rental property may obtain both the certificate and delay the payment of property taxes for the three

years "permitted" in the statute before a tax sale would occur.

Accordingly, we agree with the trial court that the ordinance does not directly conflict with the GPTA, nor does the GPTA completely occupy the field that the ordinance attempts to occupy. Consequently, the ordinance is not preempted by the GPTA.

Plaintiffs also contend that the ordinance is not authorized by, and conflicts with, defendant's city charter. As stated in *Bivens v Grand Rapids*, 443 Mich 391, 397; 505 NW2d 239 (1993):

> An ordinance enacted by the governing body of a home rule city is valid only if it is consistent with the powers conferred by the state in its constitution and statutes, and if it falls within the scope of authority delegated by the electorate in the city's charter. See Const 1963, art 7, § 22.

Here, the relevant portions of Chapter XI of the Muskegon City Charter provide:

> All the provisions of the general tax law of the State of Michigan, except as herein otherwise provided, shall apply to and control the assessment of property and the collection of taxes in the City of Muskegon. [§ 1.]

> Collection fees, penalties and interest on taxes shall be collected by the City Treasurer in accordance with the provisions of state law. [§ 6.]

These charter provisions clearly declare that state tax law applies unless the charter provides otherwise. Defendant is authorized to promulgate ordinances such as subsection 4-83(b) pursuant to the state constitution, Const 1963, art 7, §§ 22, 34, and pursuant to the Home Rule City Act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.* Plaintiffs, however, contend that sub-

section 4-83(b) conflicts with the charter provision
that requires the city treasurer to collect fees, penal-
ties, and interest on taxes in accordance with state
law. We find no conflict because the ordinance does
not change the party assigned to collect the property
taxes; rather, the ordinance requires only that the
property taxes be paid before an owner of a rental
dwelling may obtain a certificate of compliance.

Accordingly, the ordinance is authorized by the
charter, does not conflict with the charter, and is,
therefore, valid pursuant to the charter.

Plaintiffs next argue that the ordinance is unconsti-
tutional because it violates the Due Process Clauses.
US Const, Am XIV; Const 1963, art 1, § 17. "The
underlying purpose of substantive due process is to
secure the individual from the arbitrary exercise of
governmental power." *People v Sierb*, 456 Mich 519,
523; 581 NW2d 219 (1998). Substantive due process
requires that ordinances, or any other police power
legislation, must be reasonably exercised. *Delta Char-
ter Twp v Dinolfo*, 419 Mich 253, 270; 351 NW2d 831
(1984), quoting *Kirsch Holding Co v Borough of Man-
asquan*, 59 NJ 241, 251; 281 A2d 513 (1971). In other
words, the regulation must not be unreasonable, arbi-
trary, or capricious. *Dinolfo, supra,* p 270. Therefore,
" "the means selected must have a real and substan-
tial relation to the object sought to be attained." " *Id.*,
quoting *Kirsch, supra,* p 251.

The stated purpose of the ordinance is found in
article V, § 4-61 of defendant's property maintenance
code, which provides:

> (b) *Purpose.* The purpose of this code is to protect the
> public health, safety and welfare in buildings intended for

human habitation and accessory structures as hereafter provided by:

(1) Establishing minimum standards for exterior property areas, exterior structure, interior structure, basic facilities, light and ventilation, occupancy requirements and fire safety. These standards are designed to be reasonably high but, at the same time, practical and attainable and should not be interpreted as a guarantee to the purchaser.

(2) Fixing the responsibilities of owners, operators and occupants of every building or structure used or intended for commercial or residential use or occupancy, in whole or in part.

(3) Provide for administration, enforcement and penalties.

The provisions of this chapter shall apply to all existing structures. Any new building construction or additions to existing structures in the city must comply with the requirements of the building code as amended. The minimum standards required under this code are designed to prevent fire hazard, structural deterioration, inadequate light, air and heat and unsanitary and overcrowded conditions which constitute a menace to the safety, health and welfare of the occupants or to the surrounding area.

Plaintiffs concede, and we agree, that this stated purpose is valid and reasonable. The question is whether the ordinance is reasonably related to the stated purpose. *Dinolfo, supra,* p 271; see also *Square Lake Hills Condominium Ass'n v Bloomfield Twp,* 437 Mich 310, 318; 471 NW2d 321 (1991). In this regard, we agree with defendant that requiring rental owners to pay delinquent property taxes before receiving a certificate of compliance is reasonably related to defendant's stated purpose of protecting the safety, health, and welfare of those inhabiting dwellings and of eliminating deteriorated dwellings from the city. Uncontroverted affidavits of city officials indicate that houses in the city that revert to the

state because of tax delinquency are normally rental properties and are usually dilapidated when they do revert to the state.

Accordingly, we conclude that there is a rational relationship between the requirement that any delinquent property taxes be paid before a certificate of compliance can be issued for a rental dwelling unit and the city's legitimate interest in providing safe and habitable rental dwellings to its citizens. Consequently, defendant's ordinance does not violate the substantive due process rights of plaintiffs.

Lastly, plaintiffs argue that the ordinance violates the Equal Protection Clauses. US Const, Am XIV; Const 1963, art 1, § 2. An ordinance is presumed to be constitutional when reviewing a classification under an equal protection challenge. *Brittany Park Apartments v Harrison Charter Twp*, 432 Mich 798, 804; 443 NW2d 161 (1989). The burden is on the party challenging the ordinance to show that the classification established is not rationally related to a legitimate governmental interest. *Id.* "Under the rational basis test there must be a showing that the ordinance is discriminatory and arbitrary, and that its classifications are without reasonable justification." *Id.*

We utilize the test set forth in *Alexander v Detroit*, 392 Mich 30, 35-36; 219 NW2d 41 (1974), a case involving a constitutional attack on a city refuse collection ordinance. This test contains two prongs: (1) whether the ordinance's classifications are based on natural distinguishing characteristics and whether the classifications bear a reasonable relationship to the object of the ordinance and (2) whether all persons of the same class are included and affected alike or whether immunities or privileges are extended to an

arbitrary or unreasonable class while denied to others of a like kind. Accord *Brittany Park Apartments, supra,* p 804.[1]

We note initially that defendant stipulated in its motion for summary disposition that the ordinance does not apply to single-family, owner-occupied dwellings. Although we acknowledge that the operation of rental properties is a business rather than a purely residential matter, the problem here is that the ordinance treats rental property owners differently from other businesses. Other businesses (nonrental properties) are required to obtain a certificate of registration and one of the prerequisites for obtaining such a certificate is that all outstanding debts to defendant be paid, *except* real property or income taxes. Muskegon Code of Ordinances, § 5-9.6. Thus, defendant has created a subset of businesses—the owners of rental dwelling properties—and treats them entirely differently than it treats other, nonrental property businesses.

We hold that defendant's ordinance violates the guarantee of equal protection because it violates the second prong of the test set forth in *Alexander.* The ordinance does not include and affect all persons of the same class (businesses) and extends immunities or privileges to an arbitrary class (businesses who are not owners of rental properties and who are immune from the requirement of paying real property or income taxes before obtaining a certificate of regis-

---

[1] Although our dissenting colleague criticizes our use of the test set forth in *Alexander* and *Brittany Park Apartments*, these cases have not been overruled or repudiated by our Supreme Court and they concerned equal protection attacks on ordinances; therefore, we find them to be specifically applicable to the present case.

tration), while denying the exact immunities and privileges to others of a like kind (businesses who are owners of rental properties and are required to pay all previously billed property taxes before obtaining a certificate of compliance). Consequently, we find that defendant's ordinance impermissibly treats certain components of the same class (businesses) differently.

Defendant's contention that if property owners of the rental properties are current in their property taxes, then they have a "heightened interest" in using the money saved from paying interest and penalty fees on delinquent taxes to maintain their rental properties is not supported in any way by record evidence. Instead, we find that plaintiffs have met their burden of showing that the classification established by the ordinance is not *rationally related* to a legitimate governmental interest because the ordinance subjects a subset of businesses to a financial requirement to operate and does not include or affect the entire class, thus extending a privilege to a certain set of businesses while denying that privilege to another (rental dwellings). Accordingly, we find this distinction to be a violation of equal protection and find that the trial court erred in granting summary disposition in favor of defendant with respect to plaintiffs' equal protection claim.

There being no material factual dispute, plaintiffs are entitled to judgment as a matter of law with respect to the equal protection claim. We reverse on this claim only and remand to the trial court for entry of judgment in favor of plaintiffs. Jurisdiction is not retained.

WHITBECK, concurred.

Bandstra, C.J. (*concurring in part and dissenting in part*). I concur with the decision of the majority that the ordinance at issue here is not preempted by state law, does not conflict with defendant's charter, and does not deny plaintiffs substantive due process. I dissent with respect to the equal protection challenge to the ordinance and would affirm the trial court's grant of summary disposition to defendant on this ground as well.

It is helpful to begin with a brief summary of equal protection law. Judicial review of legislative enactments employs one of three tests to determine constitutionality under the Equal Protection Clauses. See, generally, *Crego v Coleman*, 463 Mich 248, 259-261; 615 NW2d 218 (2000). The highest standard, "strict scrutiny," applies to legislative classification schemes that are based on a suspect factor (such as race, national origin, or ethnicity) or that impinge on the exercise of a fundamental right. *Doe v Dep't of Social Services*, 439 Mich 650, 662; 487 NW2d 166 (1992). With regard to those classification schemes, the burden is on the legislative body to "demonstrate[ ] that its classification scheme has been precisely tailored to serve a compelling governmental interest." *Id.*

"Heightened scrutiny" review applies to legislation creating classifications on such bases as illegitimacy and gender. *Crego, supra* at 260. To be upheld, those classifications must be "substantially related to an important state interest . . . ." *Id.* at 261. Thus, for purposes of "heightened scrutiny" review as compared with "strict scrutiny" review, the challenged classification is more easily defended; the test to be applied is not as stringent with respect to either the interest being pursued or the manner in which the

classification scheme would advance that interest
("substantially related to an important state interest"
rather than "precisely tailored to serve a compelling
governmental interest").

The third standard of review, "rational basis," is
even more deferential:

> Under rational-basis review, courts will uphold legislation
> as long as that legislation is rationally related to a legiti-
> mate government purpose. To prevail under this highly def-
> erential standard of review, a challenger must show that the
> legislation is "arbitrary and wholly unrelated in a rational
> way to the objective of the statute." A classification
> reviewed on this basis passes constitutional muster if the
> legislative judgment is supported by any set of facts, either
> known or which could reasonably be assumed, even if such
> facts may be debatable. Rational-basis review does not test
> the wisdom, need, or appropriateness of the legislation, or
> whether the classification is made with "mathematical
> nicety," or even whether it results in some inequity when
> put into practice. Rather, the statute is presumed constitu-
> tional, and the party challenging it bears a heavy burden of
> rebutting that presumption. [*Crego, supra* at 259-260 (cita-
> tions omitted).]

Thus, in contrast to the higher scrutiny standards, the
burden is clearly placed on the party challenging the
legislative scheme, and that burden is heavy. There
must be proof that the classification is arbitrary and
wholly unrelated to any legitimate government
purpose.

The legislative classification scheme here does not
impinge on the exercise of any fundamental right and
it is not based on any suspect factor. Accordingly, we
must employ the rational basis test in reviewing the
equal protection challenge to it. *Frame v Nehls*, 452

Mich 171, 183; 550 NW2d 739 (1996).[1] The dispositive question is whether plaintiffs have met their "heavy burden" of proof by showing that defendant's classification scheme is "arbitrary and wholly unrelated in a rational way" to "a legitimate government purpose." *Crego, supra* at 259-260. If not, and if the legislative scheme can be "supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable," we must conclude in favor of finding constitutionality. *Id.* at 260.

Through affidavits and deposition testimony, defendant articulated a special problem it has with rental property owners, in contrast to other businesses. This evidence was summarized by the trial court:

> The 1990 Census of Population and Housing shows that 45% of Muskegon's 14,767 occupied housing units were rental units. Undisputed sworn testimony demonstrates that a substantial majority of rental properties which are not current in their tax payments are deteriorated, and unsafe for human occupancy. When they deteriorate, the City generally does not apply to receive these tax reverted properties. Tax delinquency carries over to lack of interest in providing safe rentals for the public. Finally, the City's tax collection percentage is lower than the majority of Michigan

---

[1] Plaintiffs expressly conceded in their brief that the rational basis test applies here. It does not appear that the majority disagrees with this conclusion. It relies on *Brittany Park Apartments v Harrison Charter Twp*, 432 Mich 798, 804; 443 NW2d 161 (1989), which reiterates the rational basis test. *Ante* at 55. The majority also, however, relies on *Alexander v Detroit*, 392 Mich 30, 35-36; 219 NW2d 41 (1974), which utilizes a two-pronged test for rational basis analysis. This two-pronged test does not fit nicely into the judicial review scheme outlined above. However, that test does seem to concentrate on the "reasonableness" of the classification in relation to its object or purpose, consistent with the "rational basis" test. In any event, to the extent that *Alexander* is inconsistent with more recent Michigan Supreme Court precedents cited above, those precedents are controlling.

municipalities. This results in higher interest costs when the City borrows or issues bonds.

The purpose of defendant's treating rental property businesses differently than other businesses is apparent. By requiring payment of taxes "up front," before units can be rented, defendant seeks to reduce the fiscal, safety, health, and welfare problems that result disproportionately from rental properties.[2]

The majority states that defendant's position regarding the rational basis for this classification scheme "is not supported in any way by record evidence." *Ante* at 57. I first note that the majority's analysis in this regard ignores the presumption of constitutionality that defendant's ordinance enjoys and the corresponding heavy burden of proof that plaintiffs must bear to show that the ordinance is unconstitutional. In effect, the majority places the burden of proof on defendant, as if this is a "strict scrutiny" case. The question here is not whether defendant has proved the rational basis for the classification scheme. The question is whether plaintiffs have come forward with evidence sufficient to show defendant's ordinance to be arbitrary and wholly unrelated to a legitimate government purpose.

I conclude they have not. There has been no showing that rental properties are not disproportionately tax delinquent compared to properties owned by other businesses. In fact, the record includes admissions by members of the Muskegon Area Rental Asso-

[2] This is not to say that all rental property owners fail to pay their taxes, that other businesses always pay their taxes, or that the failure of other businesses to do so leads to no problems. Defendant is not required to construct a classification scheme with "mathematical nicety" to prevent any inequities. *Crego, supra* at 260.

ciation that allowing rental properties to become delinquent is a common business practice. Defendant has articulated reasons why its failure to promptly receive taxes when due causes fiscal problems, and plaintiffs have offered no evidence to suggest that those problems do not result from tax delinquencies. Thus, if the purpose of the classification scheme here was simply to encourage prompt payment of taxes for fiscal reasons, by enacting a special penalty against a class of property owners who disproportionately are tax delinquent, the classification would pass constitutional muster.

However, defendant has articulated other reasons for treating rental property owners differently than other businesses. In sum, defendant's position is that the deteriorating conditions of residential properties are commonly the result of, or exacerbated by, the failure to pay taxes when due. This seems a common-sense conclusion to anyone familiar with "urban blight." It is certainly at least "rational speculation" on defendant's part. See *Alexander v Merit Systems Protection Bd*, 165 F3d 474, 484 (CA 6, 1999) ("legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data"). Again, plaintiffs have not shown that there is no relationship between housing deterioration and tax delinquency or otherwise proved that the classification scheme at issue here has no "rational basis" in this regard.[3]

---

[3] It seems the majority simply disagrees with defendant about whether requiring an occupancy permit is an effective approach for addressing the problems associated with tax delinquencies. However, "rational-basis review does not test the wisdom . . . or appropriateness" of a classification scheme, *Crego, supra* at 260.

I would affirm the decision of the trial court granting summary disposition to defendant on all grounds.